RUTH HUBBELL, Appellant, v TRANS WORLD LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

Second Department, October 18, 1976

*Valentine A. Meehan (Thomas J. Craig, Jr.,* on the brief), for appellant.

*Peter Landau* for respondent.

SHAPIRO, J. In an action to collect death benefits under a life insurance policy, the defendant moved to dismiss the plaintiff's complaint and the plaintiff cross-applied for sum-

mary judgment.[1] The Special Term denied both motions and the plaintiff appeals the denial of her cross application. We reverse and grant summary judgment to the plaintiff.

## FACTS

On May 21, 1968 Sam Hubbell, plaintiff's husband, took out a $30,000 life insurance policy with the defendant.[2] The policy called for annual premium payments of $895.95. The annual premium due on May 21, 1971 was never paid. Sam Hubbell became ill in November, 1970. He was hospitalized on December 12, 1970, and he was not discharged until March 4, 1971. During his hospital stay both of his legs were amputated.

By letter dated November 24, 1971 the plaintiff, in great detail, notified the defendant of the nature and extent of her husband's disability. He died on February 7, 1972. Taking the position that the "policy, including all riders attached thereto, terminated for nonpayment of the premium due on May 21, 1971", the defendant advised the plaintiff's attorney "that your application for the death benefit under the above captioned policy must be denied." This action then followed.

The insurance policy contains a provision with respect to grace periods which, in part, states: "Grace Period—A grace period of thirty-one days without interest will be allowed for the payment of each premium after the first during which period of grace the policy will continue in force."

It also contains a "Waiver of Premium Rider" with an "expiry" date of May 21, 1983. The provisions of the rider, so far as are here relevant, read as follows:

*"The Company will waive the payment of each premium becoming due* under the policy, *after commencement of total disability of the insured and during its uninterrupted continuance,* upon receipt of due proof of the total disability of the insured during the continuance of this rider and prior to the expiry date *subject to the terms and conditions of the policy.* * * *

"Definition of Total Disability

"* * * The *total* and irrecoverable *loss* of the sight of both

---

1. After the plaintiff's cross application for summary judgment was denied, she moved to renew her application. The Special Term denied her renewal motion by an order dated January 12, 1976.

2. The beneficiary was Sam Hubbell's first wife, who assigned her rights under the policy to the plaintiff.

eyes, or of the use of both hands, *both feet,* or one hand and one foot *will be regarded as total disability* in any event. * * *

"Notice of Claim and Proof of Total Disability

"Before any benefit will be available or payable, *written notice of claim and due proof of disability must be given to the Company during the lifetime and continuance of total disability of the insured.* However, *failure to give such notice* and such proof within the times specified *will not invalidate* nor diminish *the claim if it is shown not to have been reasonably possible to give notice and proof within such times and that each was given as soon as reasonably possible.* * * *

"Termination

"This *rider shall cease to be in force* under any of the following conditions *except where the insured is totally disabled and shall qualify for benefits hereunder.*

"(1) *If any premium is not paid before the expiration of the grace period"* (emphasis supplied).

### THE CONTENTIONS OF THE PARTIES

The defendant's position is that the plaintiff may not recover on the policy because it lapsed for nonpayment of the May 21, 1971 premium six months before it received notice (by letter from the plaintiff dated November 24, 1971) that on or before February, 1971 the insured had become totally disabled.

The plaintiff contends that she fully complied with the terms of the policy and that it had not lapsed for nonpayment of the premium due May 21, 1971 because before that time Sam Hubbell had become totally disabled. She also contends that if notice of claim was not timely, the delay was excusable because her husband was totally disabled and she had been unaware of the existence of the policy until November, 1971, when she wrote the defendant, and that therefore the notice was given as soon as was reasonably possible.

### THE OPINION OF THE SPECIAL TERM

In denying the plaintiff's cross application for summary judgment, the Special Term cited paragraph (c) of subdivision 3 of section 158 of the Insurance Law, which provides, in part: "Failure to furnish proof of disability within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such

proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required." It then went on to hold that:

"Inasmuch as such proof was given to defendant within the year after May 1, 1971, when the premium became due, plaintiff has brought herself within the provision of such section. * * * a question of fact exists as to whether it was reasonably possible to have given notice prior to November 24, 1971, and same requires a trial."

### THE LAW

The real question here is whether the waiver of premium rider stayed the lapse of the policy. We hold that it did and that the Special Term erred in finding a question of fact necessitating a trial in that portion of the rider which reads that "failure to give such notice and such proof within the times specified will not invalidate nor diminish the claim if it is shown not to have been reasonably possible to give notice and proof within such times and that each was given as soon as reasonably possible."

It was not necessary for the Special Term to reach that alternative provision of the policy, for it only came into play if there was a failure to give "written notice of claim and due proof of disability * * * during the lifetime and continuance of total disability of the insured." Here, it is undisputed that the defendant was given the requisite notice and proof during Sam Hubbell's total disability and while he was still alive.

Consequently, despite the fact that the premium due on May 21, 1971 was not paid, the policy was not terminated because Sam Hubbell's total disability commenced before that date and the waiver of premium rider explicitly states that "[t]he Company will waive the payment of each premium becoming due under the policy, *after commencement of total disability of the insured* and during its uninterrupted continuance"—subject only to the condition that "[b]efore any benefit will be available or payable, written notice of claim and proof of disability must be given to the Company during the lifetime and continuance of total disability of the insured" (emphasis supplied). To make its meaning even clearer, the rider provides that: "This rider shall cease to be in force under any of the following conditions *except where the insured is totally disabled and shall qualify for benefits hereunder.* (1) If any

premium is not paid before the expiration of the grace period" (emphasis supplied).

Thus the rider itself refutes the defendant's contention that the policy was terminated for nonpayment of the premium "before the expiration of the grace period", because that contention does not apply "where the insured is totally disabled".

An examination of the provisions of paragraph (c) of subdivision 2 and paragraph (c) of subdivision 3 of section 158 of the Insurance Law makes it manifest that they permit insurance companies to require that notice of total disability be given to them during the lifetime of the insured and during the period of disability, or as soon as reasonably possible, and permit them to impose "any reasonable requirements as to the time, method and form of proof of disability." However, no part of those sections requires the insured to give notice of his disability *prior* to the date the policy would otherwise have lapsed for nonpayment of a premium.

The insurance company's contention that under the terms of the policy the insured was required to give notice and proof of disability before the lapse date does not accord with the requirements of the Insurance Law or with the wording of its policy, and moreover would, under certain circumstances, make compliance impossible. For example, if the insured became totally disabled a day or two or three or some other short period of time before the lapse date, under the construction urged by the defendant, the insured's rights under the policy would terminate in spite of the waiver of premium rider simply because he could not comply with the notice requirements prior to that date. Such a construction flies in the face of reason and fails to give heed to the requirements of the policy that the insured could file the notice and proof of claim "as soon as reasonably possible" if he failed to do so during his "lifetime and continuance of total disability" because it was not "reasonably possible to give notice and proof" within that time. Even assuming, *arguendo,* that there is, in this connection, an ambiguity in the policy, the rule is clear that any ambiguity in a written instrument should be resolved against its author *(Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 389-391).

Since the defendant's sole reason for refusing to pay the $30,000 death benefit due under the policy was "that the said policy, including all riders attached thereto, terminated for

nonpayment of the premium due on May 21, 1971", it may not now assert any other grounds for nonpayment, assuming there are such grounds (see *Appell v Liberty Mut. Ins. Co.,* 22 AD2d 906, affd 17 NY2d 519; *Pensky v Aetna Life & Cas. Co.,* 84 Misc 2d 270; 18 Couch, Insurance [2d ed], § 71.43). As the defense urged is untenable as a matter of law, and as there is no fact question requiring a trial, summary judgment should have been directed in favor of the plaintiff for the relief demanded in the complaint. Accordingly, the order of Special Term dated November 20, 1975, insofar as it denied plaintiff's cross application for summary judgment, should be reversed and her application granted. The appeal from the order dated January 12, 1976, which denied plaintiff's renewed motion, should be dismissed as academic.

HOPKINS, Acting P. J., COHALAN, DAMIANI and TITONE, JJ., concur.

Order of the Supreme Court, Nassau County, dated November 20, 1975, reversed insofar as appealed from, and cross application for summary judgment granted.

Appeal from the order of the same court, dated January 12, 1976, dismissed as academic in view of the disposition of the appeal from the order dated November 20, 1975.

Plaintiff is awarded one bill of $50 costs and disbursements to cover both appeals.