AMERICAN HOME ASSURANCE COMPANY, Respondent, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY et al., Appellants.

First Department, January 25, 1979

**APPEARANCES OF COUNSEL**

*Sholem Friedman* of counsel *(Milton H. Pachter* and *Arthur P. Berg* with him on the brief; *Patrick J. Falvey,* attorney), for Port Authority of New York and New Jersey, appellant.

*Debra Evenson* of counsel *(Stephen Greiner* with her on the brief; *Willkie Farr & Gallagher,* attorneys), for 22 Cortlandt Realty Company, appellant.

*Benjamin Vinar* of counsel *(Thomas R. Newman* with him on the brief; *Bower & Gardner,* attorneys), for respondent.

**OPINION OF THE COURT**

FEIN, J.

Defendants Port Authority of New York and New Jersey (Port Authority) and 22 Cortlandt Realty Company (Cortlandt) appeal from an order which denied the Port Authority's motion to dismiss the complaint and which granted plaintiff's cross motion for summary judgment.

The action seeks a declaration of the rights of the parties under an insurance policy issued by American Home to the Port Authority furnishing liability coverage with respect to the construction of the World Trade Center. The underlying action which prompted the institution of this declaratory judgment action was brought by Cortlandt to recover from the Port Authority, the owner and party allegedly responsible for the construction and operation of the World Trade Center, upon allegations that "the construction and placement of the Twin Towers had created and continues to create an artificial

wind condition by which winds blowing from a westerly direction through the aperture between the Twin Towers are greatly increased in velocity thereby causing unusual, increased and unnatural wind pressures to bear upon 22 Cortlandt Street", resulting in Cortlandt's building becoming "subject to abnormal rotating and swaying movements which cause stress on the building". Cortlandt alleges resulting physical damage to and impairment of the value of the building, claiming that the increased wind pressures will require certain structural repairs and alterations to secure the building in the future.

The complaint in that action contains six separate causes of action, premised upon six different legal theories. The first cause is predicated upon absolute liability, resulting from the construction and placement of the Twin Towers in relation to other buildings in the area. The second and third causes charge the Port Authority with negligence in failing to (1) modify the Twin Towers so as to eliminate the artificial wind condition; (2) notify other owners of real property in the area so as to afford them sufficient opportunity to make necessary structural changes to protect their respective buildings; and (3) determine that the construction and placement of the Twin Towers would create an artificial wind condition which would cause unusual, increased and unnatural wind pressures, resulting in substantial damage to nearby structures. The fourth cause is predicated upon the assertion that the World Trade Center constitutes a nuisance, injurious to 22 Cortlandt Street. The fifth cause sounds in continuing trespass, resulting from the increased wind pressures created by the construction and placement of the Twin Towers, while the sixth is premised upon the assertion that these wind pressures resulted in a taking by the Port Authority of Cortlandt's property without just compensation.

On January 25, 1977, American Home disclaimed coverage under its general liability policy and refused to defend the Port Authority in the underlying action, relying upon exclusion (k) of the policy, which excludes from coverage property damage "due solely to errors in design by the Authority, or its consulting engineers". Plaintiff thereafter brought this action for a judgment declaring that, as insurer, it was under no duty to defend or indemnify the Port Authority in the underlying action and that its disclaimer of coverage under the policy was proper.

We note as a preliminary matter, that the order appealed from did not appropriately declare the rights of the respective parties as is required. We recently had occasion to observe in this connection in *Bacon v Bacon* (61 AD2d 969) "Since this was an action for declaratory judgment, the complaint should not have been dismissed * * * The court at Special Term, instead of dismissing the complaint, should have made an appropriate declaration of the rights of the parties with respect to the subject matter of the litigation *(Sweeney v Cannon,* 30 NY2d 633; *Lanza v Wagner,* 11 NY2d 317, 334, app dsmd 371 US 74, cert den 371 US 901; *Fhagen v Miller,* 36 AD2d 926, affd 29 NY2d 348, cert den 409 US 845; *Todaro v New York City Employees' Retirement System,* 42 AD2d 887)." The failure of Special Term to declare the rights of the parties was error. Nevertheless, the error is neither dispositive nor controlling here, since we also disagree with Special Term's determination on the merits.

Special Term upheld the propriety of plaintiff's disclaimer, finding that the complaint in the underlying action was "bottomed" solely upon "errors in design", specifically excluded from coverage under the terms of the policy. The court construed each cause of action, albeit based upon different legal theories, as seeking recovery for "error in design and nothing else" in the design and/or construction of the Twin Towers.

In granting the insurer's cross motion for summary judgment, Special Term found inapplicable the principle expressed by the Court of Appeals in *Prashker v United States Guar. Co.* (1 NY2d 584). The court there held that determination of the issue of obligation to pay must await the outcome of the underlying liability action, since the dispositive issues in the declaratory judgment action were so interrelated with the liability issues as to preclude disposition of the former before there had been a final resolution of the latter. Under such circumstances, a declaratory judgment action to establish liability to pay was held to be premature in advance of final disposition of the liability action. Such a result follows where some grounds of liability are asserted which would invoke the coverage of the policy, while others relied upon are without the scope of coverage. This was the very situation which confronted the Court of Appeals in *Prashker (supra),* the court there concluding that it could not ascertain prior to the trial of the negligence action which of the bases of liability would

be adjudicated against the assureds. Therefore, any declaratory judgment action to establish the extent of insurance coverage was premature, pending resolution of the liability issues in the case. Judge VAN VOORHIS, writing for the unanimous court in *Prashker* (1 NY2d 584, 590-591, *supra)* observed in this connection:

"Manifestly it cannot be ascertained in advance of the trial of these negligence actions which of these grounds of liability, if any of them, will be adjudicated against these assureds. Consequently it cannot be known in advance of the determination of those actions whether the estate of the pilot and the owner of the plane are indemnified by this policy against whatever judgments for damages which may be entered against them. If the existence or absence of liability on the part of this insurance carrier is to be declared under any and all contingencies in advance of the trial of the primary negligence actions, it may well be that the insurance company will be held or exonerated in this declaratory judgment action on a different factual basis from that which will later be established in the negligence actions. It is only the latter which can be controlling * * *

"This policy is one of indemnification; it is clear that the liability of the insurance company depends upon the basis for liability which is adjudicated against the assureds in the main actions. Unless the insurance company would be liable under the policy on the facts underlying each theory of liability pleaded against the assureds in the complaints in the pending negligence actions, it would be premature to entertain jurisdiction of a declaratory judgment action before it can be known whether or not the loss would be covered by the policy."

The principle is firmly established and has been repeatedly followed in this State *(Cordial Greens Country Club v Aetna Cas. & Sur. Co.,* 41 NY2d 996; *Everlast Sporting Goods Mfg. Co. v Aetna Ins. Co.,* 23 AD2d 641; *Aetna Cas. & Sur. Co. v Lauria,* 54 AD2d 183; *Exchange Mut. Ins. Co. v Blazey,* 19 AD2d 682).

Special Term, although it took cognizance of the principle, found the *Prashker* doctrine to be inapplicable here. We disagree. The complaint in the underlying action may well be construed as alleging a claim for relief based upon error in design in connection with the construction of the World Trade Center, thereby creating the increased wind condition which

allegedly resulted in damage to Cortlandt's building. This, however, is an issue to be disposed of in the underlying action. If liability is adjudicated upon that basis, a determination would then be required as to the propriety of the insurer's disclaimer under the exclusion for property damage "due solely to errors in design" as contained in the policy.

However, the complaint in part may also be construed as asserting claims for relief not predicated "solely" upon "errors in design." For example, the first cause of action appears to assert a claim of strict liability premised upon the placement of the Twin Towers. It would be premature to determine in this case whether a viable cause of action is stated, and, if so, whether liability under such cause is premised "solely" upon "errors in design." The second cause of action, sounding in negligence, alleges the failure of the Port Authority to notify other property owners so as to enable them to take sufficient measures to protect their buildings from the artificial wind condition created by the placement and construction of the Twin Towers. Such a claim for relief may or may not be based upon error in design. Also, the complaint may be read as asserting causes of action arising from the mere existence of the Twin Towers, albeit properly designed. To illustrate, the fourth cause of action appears to be predicated on a claim that the Twin Towers, whether proper in design and properly constructed, nevertheless, constitute a nuisance, resulting in damage to 22 Cortlandt Street by reason of the high velocity wind condition created by the mere presence of the buildings. The fifth cause is likewise premised upon the assertion that the extraordinary wind condition created by the Twin Towers constitutes a continuing trespass. It is not alleged that this condition is caused by any error in design. Whether legally sufficient cognizable causes of action are stated or provable is not now before us. As stated in *International Paper Co. v Continental Cas. Co.* (35 NY2d 322, 325): "An insured's right to be accorded legal representation is a contractual right and consideration upon which his premium is in part predicated, and this right exists even if debatable theories are alleged in the pleading against the insured."

For the present purpose, it is sufficient to observe that the complaint may be construed as seeking relief upon grounds other than error in design. On this basis, the declaratory judgment action is premature to the extent that the insurer seeks a declaration upholding the propriety of its disclaimer

and relieving it of liability. The liability issue cannot be disposed of by declaratory judgment until final resolution of the underlying action *(Prashker v United States Guar. Co.,* 1 NY2d 584, 591, *supra).* The liability of the insurer to pay cannot be determined until final disposition of the suit brought by Cortlandt.

In making this determination we note the significance of the fact that the insurer relies upon an exclusion from coverage, which imposes a heavy burden of proof upon the carrier. Where a policy of insurance is written in such a manner as to be doubtful or uncertain in meaning, all ambiguities must be resolved against the company and in favor of the policyholder *(Hartol Prods. Corp. v Prudential Ins. Co.,* 290 NY 44; *Birnbaum v Jamestown Mut. Ins. Co.,* 298 NY 305; *Bronx Sav. Bank v Weigandt,* 1 NY2d 545; *Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386; *Miller v Continental Ins. Co.,* 40 NY2d 675). Moreover, when the issue is the appropriate construction or interpretation to be placed upon an exclusionary clause in a policy, the carrier must establish that its construction or interpretation of the policy is the *only* construction that can fairly be placed thereon *(Sincoff v Liberty Mut. Fire Ins. Co., supra,* p 390; *Bronx Sav. Bank v Weigandt, supra,* pp 551-552). We reject the contention urged by respondent on this appeal and as found by Special Term, that the complaint in the underlying action may only be read as seeking damages "solely" resulting from "errors in design". Special Term erred in prematurely declaring the exclusion sufficient to permit the insurer to avoid ultimate liability under the policy. Such determination cannot be made until final resolution of the property damage action.

We turn now to the question of the obligation to defend. Since some grounds are alleged which might impose liability upon the insurer under the policy, sufficient is shown to require that the insurer defend its assured in the underlying action. The policy requires that the insurer defend any suit brought against the insured within the coverage of the policy "even if such suit is groundless, false or fraudulent". Under such a provision, the insurer is obligated to handle the defense where there is alleged a state of facts covered by the policy "regardless of whether such allegations squared with objective truth or were utterly false and groundless" *(Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y.,* 297 NY 148, 153; see, also, *Utica Mut. Ins. Co. v Cherry,* 38 NY2d 735).

■ In determining whether there is a duty to defend, the point of departure is the allegations of the complaint in the action brought against the insured. If the allegations in the underlying action are, on their face, within the compass of the risk covered by the policy, the insurer is obliged to assume the defense of the action *(Goldberg v Lumber Mut. Cas. Ins. Co. of N. Y., supra; International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, *supra).* Where the facts alleged clearly do not bring the case within the coverage of the policy, the insurer is free of such obligation *(Lionel Freedman, Inc. v Glens Falls Ins. Co.,* 27 NY2d 364, mot for rearg den 28 NY2d 859). However, if various grounds are alleged, some within and some without the coverage of the policy, the insurer is bound to undertake the defense of the action on behalf of its assured *(Mason-Henry Press v Aetna Life Ins. Co.,* 211 NY 489; *Ross v Maryland Cas. Co.,* 11 AD2d 1002, affd 9 NY2d 876; *Mitchell v Lindstrom,* 12 AD2d 813, mot for lv to app den 9 NY2d 613; *St. Paul Fire & Mar. Ins. Co. v Clarence-Rainess & Co.,* 70 Misc 2d 1082, affd 41 AD2d 604). As observed in *Prashker v United States Guar. Co.* (1 NY2d 584, 592, *supra),* "The circumstance that some grounds are alleged in the complaints in the negligence actions which would involve the insurance company in liability, is enough to call upon it to defend these actions".

It follows that the duty to defend is broader than the duty to pay *(Goldberg v Lumber Mut. Cas. Ins. Co., supra; International Paper Co. v Continental Cas. Co., supra; Utica Mut. Ins. Co. v Cherry,* 38 NY2d 735, *supra; Cordial Greens Country Club v Aetna Cas. & Sur. Co.,* 41 NY2d 996, *supra; Grand Union Co. v General Acc., Fire & Life Assur. Corp.,* 254 App Div 274, affd 279 NY 638). This principle flows logically from the fact that the duty to defend arises from the insurer's contractual obligation to the insured, whereas the liability to pay is dependent upon the law of negligence *(C. O. Falter Inc. v Crum & Forster Ins. Cos.,* 79 Misc 2d 981, 984). As held in *Grand Union Co. v General Acc., Fire & Life Assur. Corp. (supra,* p 280) "The distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insurer to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured's ultimate liability." The

ultimate validity of the allegations, therefore, is irrelevant. The existence of the duty is dependent upon whether sufficient facts are stated so as to invoke coverage under the policy. As frequently observed, the duty to defend arises not from the probability of recovery, but from its possibility, no matter how remote. *(Commercial Pipe & Supply Corp. v Allstate Ins. Co., 36 AD2d 412, affd 30 NY2d 619; Empire Mut. Ins. Co. v Bogart, 13 Misc 2d 1094; Chatham Corp. v Argonaut Ins. Co., 70 Misc 2d 1028.)* As stated in *La Pierre, Litchfield & Partners v Continental Cas. Co.* (59 Misc 2d 20, 23, mod on other grounds 32 AD2d 353): "Even where the complaint does not state facts with sufficient definiteness to clearly bring the case within or without the coverage of the policy, it has been held that if there is potentially a case within the coverage of the policy the insurer is obliged to defend". And, any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier *(C. O. Falter, Inc. v Crum & Forster Ins. Cos., supra; Grand Union Co. v General Acc., Fire & Life Assur. Corp., 254 App Div 274, affd 279 NY 638, supra).*

The reality of the insurer's obligation is recognized in *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 326, *supra):* "While policy coverage such as the one here involved is often referred to as 'liability insurance' it is clear that it is, in fact, 'litigation insurance' as well."

The insurer's argument that any recovery in the underlying action will require proof of "error in design" properly pertains to the carrier's duty to pay, not to its duty to defend. "As noted, the duty to defend is broader than the duty to pay and comprehends the possibility that an insurer may be required to furnish a defense in an action, although it may not ultimately be liable to indemnify the insured." *(Sucrest Corp. v Fisher Governor Co.,* 83 Misc 2d 394, 404, affd 56 AD2d 564.) The obligation to defend is not diminished by the possibility or the probability that the plaintiff in the underlying action will not be able to recover at all without establishing an "error in design". This must await the outcome of the underlying action. *(International Paper Co. v Continental Cas. Co., supra.)*

As noted, the complaint in the underlying action may be construed as seeking relief upon grounds other than "solely" "errors in design". This imposes on the insurer the duty of assuming the defense on behalf of its assured pursuant to the terms and conditions of the policy. Had the insurer intended

to exclude the contingency found here to exist, it should have done so by express language and provision therefor in the policy. As was observed by the Court of Appeals in *Birnbaum v Jamestown Mut. Ins. Co.* (298 NY 305, 313, *supra):* "If the defendant intended to limit its liability as drastically as it now claims it did, it should have done a more workmanlike job * * * drawn in such 'clear and unmistakable terms so that no one could [may] be misled.' "

Accordingly, the order, Supreme Court, New York County (ASCH, J.), entered January 18, 1978, should be modified, on the law, to the extent of denying plaintiff's cross motion for summary judgment, granting the motion by defendant the Port Authority of New York and New Jersey for partial summary judgment to the extent of declaring that there exists a duty imposed upon plaintiff insurer to defend its assured in the underlying action brought against the Port Authority by 22 Cortlandt Realty Company and that such duty to defend is not extinguished, diminished or otherwise excluded by the exclusionary clause (k) contained in the policy and relied upon by the insurer, dismissing as premature the remainder of the complaint for a declaratory judgment as to the propriety of the insurer's disclaimer and for a judgment declaring that the insurer has no duty to indemnify its assured, and otherwise affirmed, without costs or disbursements.

Settle order.

BIRNS, J. P., LANE, LYNCH and SANDLER, JJ., concur.

Order, Supreme Court, New York County, entered on January 18, 1978, denying defendant the Port Authority of New York and New Jersey's motion to dismiss the complaint and granting plaintiff's cross motion for summary judgment, unanimously modified, on the law, to the extent of denying plaintiff's cross motion for summary judgment, granting the motion by defendant the Port Authority of New York and New Jersey for partial summary judgment to the extent of declaring that there exists a duty imposed upon plaintiff insurer to defend its assured in the underlying action brought against the Port Authority by 22 Cortlandt Realty Company and that such duty to defend is not extinguished, diminished or otherwise excluded by the exclusionary clause (k) contained in the policy and relied upon by the insurer, dismissing as premature the remainder of the complaint for a declaratory judgment as to the propriety of the insurer's disclaimer and for a judgment

declaring that the insurer has no duty to indemnify its assured, and otherwise affirmed, without costs and without disbursements.

Settle order.