ALBERT J. SCHIFF ASSOCIATES, INC., Respondent, v ALAN B. FLACK et al., Appellants.

First Department, March 18, 1980

## APPEARANCES OF COUNSEL

*Roy E. Pomerantz* of counsel *(Kroll, Killarney, Pomerantz & Cameron,* attorneys), for appellants.

*Abraham Kaplan* of counsel *(Otterbourg, Steindler, Houston & Rosen, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is an appeal from the grant of partial summary judgment declaring that an insurer is legally obligated to defend its insured in pending litigation.

This action was commenced by Albert J. Schiff Associates, Inc. (Associates), a life insurance agent and employee benefit plan consultant, to seek a declaration that defendants, its insurers, have a duty to defend with respect to an action maintained against it and others in Massachusetts and, in the event of any judgment ultimately rendered against Associates in such action, to indemnify. After receipt of the summons and complaint served upon Associates in the Massachusetts action and prior to the commencement of this proceeding, defendants disclaimed any obligation to defend or indemnify.

The Massachusetts action was brought by one Backman, a life insurance agent and competitor of Associates, who alleges that he developed a novel and unique life insurance sales program under the title "Double Dollar Plan", which he disclosed to Associates' principal, Albert J. Schiff, pursuant to a nondisclosure and confidentiality agreement and that, thereafter, Schiff maliciously disclosed the plan to Associates in circumstances whereby Associates knew of Schiff's contractual commitments to Backman. It is further alleged that Associates renamed the sales approach and adopted the plan as its own.

In May of 1971 Backman had apparently conducted a seminar for the purpose of presenting his plan to a select group of agents of the Mutual Life Insurance Company of New York (MONY). Among the agents attending was Schiff. It is alleged that as a condition to attending the seminar Schiff signed a contract by which he agreed to keep the details of the plan confidential, subject to disclosure only to other MONY associates or to a potential corporate account, approved by Backman, and further that if he developed any business from Backman's concept, he would make certain specified payments to Backman.

The essence of the Massachusetts complaint, which has been described by one of the parties, not uncharitably, as "prolix, verbose, tiresome and repetitive", is that Associates and others willfully and maliciously usurped a trade or commercial secret, or both. In 10 causes of action, only 3 of which are asserted against Associates, Backman alleges, *inter alia,* breach of contract, misappropriation of property, interference with contractual relations, breach of an implied contract, unjust enrichment, breach of trust, breach of confidential relationship, unfair competition, and deceptive trade practices. Besides damages, he seeks an accounting and declaratory relief. Count IV alleges that in breach of a written agreement to keep certain information and materials "confidential", Associates did "wilfully and maliciously" breach such agreement with the purpose and intent of using the confidential information for its own economic benefit. In count V it is alleged that Associates' use of confidential information in the marketing of a competitive insurance sales program constituted a willful and malicious interference with Backman's exclusive rights. Count IX asserts willful and malicious unfair acts of competition by Associates in the "wilful misappropriation" of the sales approach material disclosed under the agreement of confidentiality.

Defendants had issued two professional indemnity insurance policies to Associates, one primary, the other excess, on identical terms, designated "Errors and Omissions Insurance", the insuring agreements of which provided:

"Underwriters, in consideration of the premium and the undertaking of the Assured to pay the deductible as described in the Schedule hereof * * * and subject to the limits of liability of this insurance as set forth in the schedule, and the exclusions, conditions and other terms of the policy, do hereby agree as follows: * * * to pay on behalf of the Assured named in the Schedule, all sums which the assured shall become legally obligated to pay by reasons of liability for any error, omission or negligent act committed, or alleged to have been committed by the Assured, * * * while in the performance of services in the professional capacity of the Assured as:

"(a) Actuaries,

"(b) Employee Benefit Plan Consultants, and

"(c) Life Insurance Agents or Brokers".

Invoking three policy exclusions, defendants disclaimed cov-

erage for any loss that Associates might incur as a result of the Massachusetts action. Whatever the merits of defendants' disclaimer, an issue we need not reach under our view of the case, we believe that the claim is not within the purview of the indemnity provided under the policy and that the insurers' reliance upon exclusions rather than on the lack of coverage cannot provide the basis for insurance which otherwise does not exist. We take note that the thrust of defendants' motion to dismiss the complaint, and its opposition to the motion for summary judgment centered on the nonexistence of coverage, and only alternatively on the exclusions upon which they originally disclaimed.

From the language of the agreement of insurance it seems clear that this professional indemnity policy was written to protect the insured with respect to liabilities arising from the performance of professional services as an actuary, employee benefit plan consultant, or life insurance agent or broker. The claims alleged in the Massachusetts complaint do not in any way suggest a negligent act, error or omission in the performance of any professional services. In fact, the sole reference to carelessness or neglect appears in paragraph 74 wherein it is alleged that Schiff had "wilfully neglected and refused to pay * * * the appropriate commission shares * * * despite repeated demands by Mr. Backman". Nor does the Massachusetts action involve a claim by any client of Associates, or any person in privity with a client, or a claim by any other broker or agent for whom Associates had agreed to act, alleging the breach of a duty of professional care. Instead, a competitor of Associates asserts improper conduct in the willful and malicious usurpation of a trade or commercial secret. To construe an errors and omissions policy as affording coverage for such tortious conduct would render the insurer liable for obligations never intended to fall within the ambit of the policy.

Moreover, any suggestion that what is pleaded in the Massachusetts complaint is Associates' neglect to adhere to the terms of Schiff's agreement with Backman, either through an erroneous interpretation of the agreement, or a misguided belief that its marketing process substantially differed from Backman's, is not only a strained and unreasonable construction, but is belied by the wording of the complaint.

While it is well recognized that the insurer's duty to defend is broader than the duty to indemnify (*International Paper Co. v Continental Cas. Co.*, 35 NY2d 322; *Goldberg v Lumber*

*Mut. Cas. Ins. Co. of N. Y.,* 297 NY 148; *American Home Assur. Co. v Port Auth. of N. Y. & N. J.,* 66 AD2d 269), the complaint fails to suggest any conduct on Associates' part which would call for the insurers to indemnify it. Weighing the allegations of the complaint, as reasonably construed, against the insuring agreement, as written, we conclude that the claimed tortious conduct is outside the scope of coverage. In such circumstances, a duty to defend does not exist. *(Shapiro v Glens Falls Ins. Co.,* 39 NY2d 204.)

The argument is made that the insurers did not originally disclaim on the ground that the claim was outside the scope of coverage. We do not believe, however, that insurance can be created by waiver. The insurers' reliance on particular policy exclusions in their initial disclaimer does not prevent them from later asserting that the claims are not covered by the policy. The waiver cases that do involve insurance claims relate to an insurer's disclaimer for a specific reason, such as arson of the insured or lack of notice, and subsequent retreat to some different technical ground other than that the claim is outside the insuring agreement. (See, e.g., *Beckley v Otsego County Farmers Co-op. Fire Ins. Co.,* 3 AD2d 190, 194; *Pensky v Aetna Life & Cas. Co.,* 84 Misc 2d 270; also, *Hubbell v Trans World Life Ins. Co. of N. Y.,* 54 AD2d 94, 98-99.) None concerns a claim which, in the first instance, is outside the ambit of the insuring agreement.

Accordingly, the order and judgment, Supreme Court, New York County (RUBIN, J.), entered February 26, 1979, denying defendants' motion to dismiss the complaint, and granting plaintiff's cross motion for partial summary judgment declaring defendants liable for the defense of the Massachusetts action, should be reversed, on the law, with costs and disbursements, and a declaration made that the insurance contracts issued by defendants to Schiff do not extend coverage for the claims asserted against Schiff in the Massachusetts action, and plaintiff's cross motion denied.

KUPFERMAN, J. (dissenting). The plaintiff-respondent is a defendant in an action in the Superior Court of the Commonwealth of Massachusetts in connection with an idea piracy claim. It is there alleged that there was submitted to the defendant and another a unique insurance concept entitled "Double Dollar", which was presented to the defendant and other insurance agents at a seminar. According to the plaintiff in the Massachusetts action, the plaintiff-respondent by its

principal agreed to keep the material confidential, and, if used, to compensate that plaintiff.

It is alleged that the plaintiff-respondent thereafter developed a similar program called "Executive Salary Protection" in violation of the agreement and the obligation to the Massachusetts plaintiff. The complaint in Massachusetts is a standard idea piracy claim involving, among others, causes of action for breach of contract, misappropriation, implied contract, unjust enrichment, etc. (See Solinger, Idea-Piracy Claims—or Advertiser, Beware!, in 1953 Copyright Problems Analyzed [CCH 1953], p 121 [Reprinted in Copyright Problems Analyzed (Rothman & Co., p 166)]; see, also, 3 Nimmer, Copyright [1979 ed], ch 16, Law of Ideas.)

In this action, plaintiff-respondent demands that the defendants-appellants' insurance companies defend the action in Massachusetts and also indemnify the plaintiff-respondent in the event a judgment is recovered. The court at Special Term provided only for defense of the Massachusetts action and made no determination with respect to the indemnification, and I would affirm.

The insurance policy involved is one of error and omission. It specifically excludes "libel or slander". Accordingly, it is obvious that it contemplated the possibility of coverage in the literary property field. While the insurance contract may be more limited than the usual policy in that area (see *Ruder & Finn v Seaboard Sur. Co.,* 71 AD2d 216) it is well recognized that "the duty to defend is broader than the duty to pay" *(Ruder & Finn v Seaboard Sur. Co., supra).*

BIRNS, J. (dissenting). I too would affirm. I agree with Justice KUPFERMAN that the "insurance policy involved is one of error and omission" and "that it contemplated the possibility of coverage in the literary property field." But I would supplement his views. The defendant was obliged to defend the Massachusetts suit wherein liability was sought against the plaintiff here on a number of theories. Those theories included, but were not limited to, willful and malicious misappropriation of an insurance concept, willful interference with the said insurance concept, willful interference with the exclusive right to license others in the use of the insurance concept, and willful and malicious commission of an unfair act of competition through wrongful use of the said insurance concept.

The policy provided coverage as follows: "INSURING AGREE-MENT * * * To pay on behalf of the Assured named in the Schedule, all sums which the Assured shall become legally obligated to pay by reason of liability for any error, omission or negligent act committed, or alleged to have been committed by the Assured, whenever or wherever the same was or may have been committed, or alleged to have been committed, on the part of the Assured, or any person who has been, is now, or may hereafter be employed by the Assured, during the period of this insurance, while in the performance of services in the professional capacity of the Assured as (a) Actuaries, (b) Employee Benefit Plan Consultants, and (c) Life Insurance Agents or Brokers PROVIDED ALWAYS THAT claim therefore is first made against the Assured during the period of this Insurance as stated in the Schedule, or its earlier termination date, if any."

The policy expressly excluded from coverage to the extent relevant to this appeal as follows:

"III. Exclusions THIS POLICY SHALL NOT INDEMNIFY THE AS-SURED IN RESPECT OF ANY CLAIM EITHER DIRECTLY OR BY WAY OF INDEMNITY: * * *

"(f) Brought about or contributed to by the dishonest, fraudulent (except if not committed with actual intent to deceive or defraud) or Criminal Act of the Assured, their Employees or their Predecessors in Business * * *

"(j) Brought about or contributed to by any co-mingling of or any inability or failure to pay or collect premium, claim or tax monies.

"(k) That the Assured gained in fact any personal profit or advantage to which the Assured was not legally entitled or for the return by the Assured of any remuneration paid in fact to them if payment of such remuneration shall be held by the courts to have been illegal."

Particularly significant, in my view, is the fact that the defendant never disclaimed liability under the policy in terms of "coverage". Defendant, however, in refusing to defend that Massachusetts suit asserts the acts which were the bases of the action fall within certain exclusions of the policy (i.e., [f], [j] or [k]).

In a letter sent by the insurer to plaintiff as assured, Lloyds formally disclaimed coverage and liability relying solely upon exclusions (f), (j) and (k) of the policy.

The operative portion of the letter in which defendant disclaimed liability and refused to defend recites:

"Applying the language of the policy to the allegations in the complaint it is our considered opinion that Exclusions (f), (j) and (k) referred to above could be applicable in this case should a judgment be rendered against the assured. Although Exclusion (f) requires a finding that the assured acted with actual intent to deceive or defraud, no such requirement is indicated for the applicability of Exclusion (k). The language of the complaint is based on breach of contract and seeks compensation for the plaintiff for such breach. Other allegations include unjust enrichment which would clearly come within the purview of Exclusion (k) and interference with contractual relations that the plaintiffs had with other brokers including the defendants. The allegations in Count 7 charge intentional interference with a contractual relationship which would be subject to the applicability of Exclusion (f). Since Count 9 charges that the defendants willfully and maliciously committed acts of unfair competition, it is our considered opinion that Exclusion (f) would be applicable here. Throughout the complaint the defendants are charged with having failed to account to the plaintiff for the above of premiums collected under the so-called Double Dollar plan, which allegations could come under Exclusion (j).

"In view of the foregoing Underwriters have instructed us to advise you that no coverage will be available to you for any loss that may be incurred as a result of the action brought against you in the Superior Court of the Commonwealth of Massachusetts by Irving A. Backman".

The defendants now claim that the Massachusetts complaint is not within the insuring clause of the policy. They may not appropriately base this disclaimer on that ground. Nowhere in the letter does the insurer disclaim upon the ground that the allegations in the Massachusetts action are without the insuring clause of the policy. Where an insurance company refuses to pay a loss or disclaims liability under the policy on a particular ground, it may not later assert other grounds for nonpayment. (*Littlejohn v Shaw,* 159 NY 188, 191; *Hubbell v Trans-World Life Ins. Co. of N. Y.,* 54 AD2d 94, 98-99; *Beckley v Otsego County Farmers Co-op. Fire Ins. Co.,* 3 AD2d 190, 194; *Jauch v Power Town Tire Corp.,* 212 App Div 326, 328-329; *D'Aquilla Bros. Contr. Co. v Hartford Acc. & Ind. Co.,* 22 Misc 2d 733, mod on other grounds 15 AD2d 509; 16

Appleman, Insurance Law and Practice, § 9260, pp 837-840.)

Review of the present record clearly established the applicability of the above principle. The letter that disclaimed coverage and liability rested upon particular grounds. The insurer's reliance upon the particular grounds stated, without reservation of other grounds, results in a waiver, precluding the carrier from later asserting other grounds not specified previously. The principle is one which applies generally to all contracts. Thus, the Court of Appeals observed in *Littlejohn v Shaw*, 159 NY, at p 191: "But, in this case, the defendants placed their rejection of the gambier upon two specific grounds, viz.: that it was not of good merchantable quality and that it was not in good merchantable condition. By thus formally stating their objections, they must be held to have waived all other objections. The principle is plain, and needs no argument in support of it, that if a particular objection is taken to the performance and the party is silent as to all others, they are deemed to be waived."

There remains for consideration the applicability of the exclusions relied upon by the carrier in disclaiming coverage. Exclusion (f) excludes from coverage any claim brought about or contributed to by the dishonest, fraudulent or criminal act of the assured. Defendants assert that this exclusion applies since the Massachusetts complaint alleges willful, intentional and malicious conduct by plaintiff and others to misappropriate Backman's sales concept. However, as observed by Special Term, the allegations in the Massachusetts action do not specifically assert dishonest, fraudulent or criminal conduct. None of the causes of action sound in fraud or seek recovery based upon any criminal conduct. The term "dishonest" implies a disposition to lie, cheat or defraud (Black's Law Dictionary [rev 5th ed], p 421; see, also, 12A Words and Phrases, p 413).

Exclusion (j) has no apparent relationship to the underlying Massachusetts action, despite appellants' assertion that the exclusion is designed to prevent the insurer from being required to pay sums improperly earned or retained by the insured. Exclusion (k) is likewise inapplicable here. Although that exclusion applies to any personal profit to which the assured was not legally entitled as found by Special Term, application of the exclusion requires an initial finding by a court that such retention was illegal. This is the specific

subject involved in the Massachusetts action. Therefore, whether or not exclusion (k) applies cannot be determined until after resolution of the underlying action. Accordingly, that exclusion may not be relied upon as a ground for the carrier to avoid its duty to defend.

It sufficiently appears on this record that the insurer did not sustain the heavy burden of proof imposed upon it, particularly considering the fact that defendants rely upon exclusions from coverage *(American Home Assur. Co. v Port Auth. of N. Y. & N. J.,* 66 AD2d 269). As this court there observed (p 276): "Moreover, when the issue is the appropriate construction or interpretation to be placed upon an exclusionary clause in a policy, the carrier must establish that its construction or interpretation of the policy is the *only* construction that can fairly be placed thereon *(Sincoff v Liberty Mut. Fire Ins. Co.* [11 NY2d 386] p 390; *Bronx Sav. Bank v Weigandt* [1 NY2d 545] pp 551-552)."

As appears from the foregoing discussion, defendants have not clearly established that any of the exclusions apply as a matter of law to preclude coverage for the underlying action. Nor have they shown that their interpretation of the exclusionary clause is the only construction that can be fairly placed thereon. One exclusion ([j]) has no apparent application to this case. The other two exclusions ([f] and [k]) may or may not apply, depending upon the outcome of the underlying action. Therefore, it is submitted that this case presents an issue somewhat similar to that which confronted the court in *American Home* (66 AD2d 269, *supra),* wherein the insurer was held obligated to defend the underlying action even though it might not be ultimately liable to indemnify the insured. The duty arises from the nature of the insurance, which although classified as "liability insurance" may be conveniently referred to as "litigation insurance" *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 326). Not without significance is this court's observation in *American Home (supra,* at pp 278-279) "Had the insurer intended to exclude the contingency found here to exist, it should have done so by express language and provision therefor in the policy. As was observed by the Court of Appeals in *Birnbaum v Jamestown Mut. Ins. Co.* (298 NY 305, 313, *supra):* 'If the defendant intended to limit its liability as drastically as it now claims it did, it should have done a more workmanlike

job * * * drawn in such "clear and unmistakable terms so that no one could [may] be misled" ' ".

Upon the foregoing, the order appealed from should be affirmed.

MURPHY, P. J., and SANDLER, J., concur with SULLIVAN, J.; KUPFERMAN and BIRNS, JJ., dissent in separate opinions.

Order and judgment (one paper), Supreme Court, New York County, entered on February 26, 1979, reversed, on the law, and vacated, and a declaration made that the insurance contracts issued by defendants to Schiff do not extend coverage for the claims asserted against Schiff in the Massachusetts action, and plaintiff's cross motion denied. Appellants shall recover of respondent $75 costs and disbursements of this appeal.