CRUM AND FORSTER MANAGERS CORPORATION *et al.*, Plaintiffs-Appellants, v. RESOLUTION TRUST CORPORATION, as receiver of Mid-State Savings and Loan Association, *et al.*, Defendants-Appellees.

Fourth District No. 4—92—0148

Opinion filed October 29, 1992.

LUND, J., dissenting.

John F. Bramfeld, of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellants.

Richard T. West, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellees Joseph W. Corley and Joann Corley.

Charles L. Palmer and John B. Alsterda, both of Flynn, Palmer, Tague & Lietz, of Champaign, for appellee Donald L. Whitsitt.

William A. Spence and Brian P. Norton, both of Freeborn & Peters, of Chicago, and Ann S. Duross, Colleen B. Bombardier, and Maria Beatrice Valdez, all of Federal Deposit Insurance Corporation, of Washington, D.C., for appellee Resolution Trust Corp.

JUSTICE STEIGMANN delivered the opinion of the court:

On October 11, 1989, plaintiffs Crum & Forster Managers Corporation (Crum & Forster), Illinois Insurance Exchange, Inc. (Exchange), and LWB Syndicate, Inc., filed an action for declaratory judgment, seeking a determination of their duty to defend and indemnify defendants Mid-State Savings and Loan Association, and Mid-State Appraising, Incorporated, d/b/a Mid-State Realty, Inc. (Mid-State), in an underlying action (Dependable Realty v. Mid-State Realty *et al.*, Champaign County Case No. 86—L—864) (the Dependable action). Plaintiffs filed a motion and defendants filed a cross-motion for summary judgment. On January 6, 1992, and February 6, 1992, the trial court entered orders denying plaintiffs' motion and allowing defendants' motion. The court determined (1) the conduct alleged in the Dependable complaint brings the defendants within potential coverage of the policy issued by Crum & Forster; (2) because the policy affords coverage, the issues of *laches, res judicata,* waiver, and abandonment are moot; and (3) the issue of the duty to indemnify was premature because the court would be required to decide several issues in the underlying–Dependable action in order to determine the issue of indemnity. The court subsequently issued a finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal.

Plaintiffs argue the following on appeal: (1) an insurance company has no duty to defend real estate brokers and agents in a business dispute between brokers under an errors and omissions professional liability policy; (2) this court has jurisdiction to review the question of whether plaintiffs have a duty to indemnify defendants; and (3) the defendants' affirmative defenses of *laches, res judicata,* waiver, and abandonment do not bar plaintiffs from claiming they have no duty to defend.

We affirm.

The record in this case reveals that Crum & Forster issued a real estate agents and brokers professional liability insurance policy to defendants Mid-State, and Joseph and Joann Corley (the Corleys) on March 15, 1986. The policy was effective February 1, 1986, through February 1, 1987, and provided coverage in part as follows:

"(1) Professional Liability and Claims Made Clause: To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally responsible to pay in damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD:

(a) by reason of any act, error or omission in professional services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as a real estate agent or real estate broker including the following related activities for real estate: consultation, appraisal, property management, property management consultation or notary public;

(b) because of personal injury arising out of the professional activities of the Insured as a real estate agent or real estate broker, including the following related activities for real estate: consultation, appraisal, property management, property management consultation or notary public."

On June 26, 1986, Dependable filed the underlying action against defendants Mid-State and the Corleys. On October 2, 1989, Dependable filed its second-amended complaint, adding Donald L. Whitsitt as a party defendant. In the second-amended complaint, Dependable alleged various counts, including the following: (1) interference with a prospective economic advantage; (2) common law tortious interference with a contractual relationship; (3) breach or inducing breach of a fiduciary duty by an officer or director; (4) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act (see Ill. Rev. Stat. 1991, ch. 121½, pars. 261 through 272); (5) common law unfair competition; (6) the common law tort of fraud; (7) theft of trade secrets; and (8) conspiracy to interfere with a contractual relationship.

The multicount complaint essentially alleged that Joseph Corley, who was employed by Dependable as its sales manager from December 1982 to December 1984, left Dependable and induced other Dependable sales agents to leave Dependable and accept employment

with Mid-State. It further alleged that Corley took business from, and left various debts with, Dependable.

After the Dependable action was commenced, the defendants retained attorneys who in turn tendered the defense of the cause to Exchange. Exchange initially indicated the defense was being accepted without a reservation of rights. Approximately six months later, however, the insurer, Crum & Forster, indicated to defendants that it would "monitor" the defense but it was not waiving any rights or defenses under the policy. Mid-State and the Corleys then filed a declaratory judgment action, seeking a declaration that the reservation of rights letter was not timely sent and that Crum & Forster was thereby estopped from asserting any reservation of rights. The trial court allowed plaintiff Mid-State's motion for summary judgment, but this court determined on review that because there was no prejudice resulting from Crum & Forster's six-month delay in sending its reservation of rights letter, it was not estopped from asserting the policy coverage defenses. (*Mid-State Savings & Loan Association v. Illinois Insurance Exchange, Inc.* (1988), 175 Ill. App. 3d 265, 271-72, 529 N.E.2d 696, 699-700.) Crum & Forster subsequently filed the present declaratory judgment action.

In Illinois, the duty of an insurer to defend an action brought against its insured must be determined solely by comparing the allegations of the complaint against the insured with the terms of the policy. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.) "If the complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend even if the allegations are groundless, false, or fraudulent." *Thornton,* 74 Ill. 2d at 144, 384 N.E.2d at 339.

Moreover, "[t]he threshold that a complaint must meet to present a claim for potential coverage is low. The allegations of the complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured." *Bituminous Casualty Corp. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 564, 571 N.E.2d 256, 262.

Plaintiffs maintain that the allegations against the various defendants in the Dependable action do not bring that action within the potential coverage of the policy. Plaintiffs argue that the policy in question was an errors and omissions policy and is analogous to malpractice insurance policies dealing solely with services to others and to the public, not actions between business partners. Plaintiffs cite Couch on Insurance, which states:

> "Errors and omissions policies form the equivalent to malpractice insurance for occupations other than those in the legal and medical fields. *** But coverage is generally extended to a

particular class of risks and is not a substitute for liability coverage." (11 Couch on Insurance 2d §44:396, at 573 (rev. 1982).)

Plaintiffs also cite *Albert J. Schiff Associates, Inc. v. Flack* (1980), 73 A.D.2d 329, 425 N.Y.S.2d 612, *aff'd* (1980), 51 N.Y.2d 692, 417 N.E.2d 84, 435 N.Y.S.2d 972, and *Mendelsohn v. CNA Insurance Co.* (1983), 115 Ill. App. 3d 964, 451 N.E.2d 919, in support of their position.

In *Schiff*, the court considered policy language similar to that in the instant policy. There, the insured, a life insurance agency, sought a declaration that defendants, its insurers, had a duty to defend in an action by a competitor alleging interference with contractual relations, breach of trust, misappropriation of property, unfair competition, and deceptive trade practices based upon an alleged disclosure of a secret sales plan. The court determined that the allegations did not suggest a negligent act, error, or omission in the performance of any professional services.

In *Mendelsohn*, the plaintiff was a lawyer who apparently represented himself in a divorce action and sought a declaration that coverage was available to him under a " 'professional, office premises and personal injury liability' " policy, and that the insurer had a duty to defend him in an action brought against him by his former wife. (*Mendelsohn*, 115 Ill. App. 3d at 964, 451 N.E.2d at 920.) The policy language provided for indemnity " 'arising from the performance of professional services for others in the insured's capacity as a lawyer because of an error, negligent omission or negligent act of the insured.' " (Emphasis omitted.) (*Mendelsohn*, 115 Ill. App. 3d at 966, 451 N.E.2d at 921.) The trial court dismissed Mendelsohn's complaint for declaratory judgment. On review, the appellate court affirmed, concluding that, in representing himself in the underlying action, he was not practicing his profession; therefore, the complaint did not allege facts necessary to bring the case within policy coverage.

Plaintiffs contend that "professional services" of real estate agents and brokers, as provided in the acts, errors, and omissions policy, means only those services rendered in the course of professional activity to others, *i.e.*, to the public and not to one's business partners or competitors. Plaintiffs further argue that defendants in the underlying cause of action were not acting in their capacity as real estate brokers or agents representing clients, but solely in a business capacity.

To determine if there is potential coverage under the policy, the court must examine the complaint in the underlying Dependable action. In its complaint, Dependable alleges certain defendants "de-

prived [Dependable] of substantial amounts of future real estate listings and commissions on sales and deprived [Dependable] of a sizable share of the real estate market"; that defendants "used confidential information such as [Dependable's] confidential sales methods and techniques and skills imparted to them by [Dependable] during extensive and confidential training sessions"; that certain defendants have caused Dependable "lost listings for the sale of real estate and has lost commissions on sales by said real estate agents which they might or would have earned for [Dependable] had [defendants] not heretofore terminated said relationship at the wrongful inducement of defendants"; that defendants induced sales persons away from Dependant into the employ of Mid-State Realty "for the purpose of acquiring real estate sales listings and the selling of real estate on behalf of Mid-State Realty in addition to acquiring as many of [Dependable's] sales agents, customers and as much of its good will as possible"; and that certain defendants have "actively solicited real estate sales listings and customers on behalf of Mid-State Realty, Inc.[,] in territories where they previously solicited listings and customers on behalf of [Dependable] and, in that connection, are using confidential information such as sales methods and skills acquired during training conducted by [Dependable], confidential methods and techniques provided them by [Dependable]."

 We conclude that the Dependable action alleges sufficient facts to satisfy the low threshold required to find potential coverage. As the trial court noted, "[i]t was the action of defendants as real estate agents and brokers in allegedly taking away Dependable's real estate business which started the proceedings in the first place. Had defendants not engaged in the real estate profession[,] there would have been no lawsuit." In addition, Dependable alleged injuries due to defendants' rendering professional real estate services using Dependable's agents, brokers, sales techniques and territory to the detriment of Dependable. These alleged acts are the conduct which led to the Dependable complaint being filed.

 We further reject the claim plaintiffs' counsel made to this court during oral argument that courts of review somehow *require* such obfuscating and opaque language in insurance policies. Insurance companies cannot go wrong by saying clearly what they intend to cover in their policies and what they intend to exclude.

 We also agree with the trial court that the question of whether plaintiffs have a duty to indemnify defendants is premature. The duty to indemnify arises only when an insured becomes legally obligated to pay damages in the underlying action. (*Zurich Insurance*

*Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163.) Accordingly, the supreme court has held that a determination of an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability in the underlying lawsuit, is premature. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930.

■ Finally, because we conclude plaintiffs have a duty to defend the defendants in the underlying action, we agree with the trial court that the issues of *laches, res judicata,* waiver and abandonment are moot.

Accordingly, for the reasons stated, we affirm the judgment of the circuit court and remand to that court for further proceedings.

Affirmed and remanded.

COOK, J., concurs.

JUSTICE LUND, dissenting:

Contracts of insurance are to be construed according to the sense and meaning of the terms which the parties have used and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. 43 Am. Jur. 2d *Insurance* §277, at 351 (1982); *Kelly v. Brotherhood of R.R. Trainmen* (1923), 308 Ill. 508, 140 N.E. 5.

The section of the policy in the present dispute provides:

"(a) [B]y reason of any act, error or omission in professional services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as a real estate agent or real estate broker including the following related activities for real estate: consultation, appraisal, property management, property management consultation or notary public."

The word "rendered" has many meanings, including to "melt down (fat) by heating" (American Heritage Dictionary 1046 (2d C. ed. 1982); however, the only reasonable definition to give the use in the contested policy is "to pay or perform" (Black's Law Dictionary 1460 (4th ed. 1968)). The coverage is for any act, error, or omission *performed* arising out of conduct of the real estate business; and, when read with the specific listed inclusion "consultation, appraisal, property management, property management consultation, or notary pub-

lic," leads to the conclusion the coverage relates to faulty performance of services to clients of the real estate firm.

The underlying claim against the insured is described in the second-amended complaint by allegations of: (1) tortious interference with a contractual relationship for prospective economic advantage; (2) breach or inducing breach of fiduciary duty by an officer or director; (3) unfair competition; (4) theft of trade secrets; (5) conspiracy to interfere with contractual relationship; and (6) fraud. The insured defendants, Joseph and Joann Corley, had been employees of Dependable Realty, but they had left to establish their own firm. The various counts of the underlying complaint filed against the insured were primarily based upon Joseph Corley's previous employment by Dependable Realty as its sales manager.

I would find the insurance policy terms to be clear and unambiguous—and only apply to acts, errors, and omissions performed for customers or clients of the real estate business. By no stretch of the imagination can the disgruntled former employer be considered a customer or client.

There is a similarity with attorney error and omission policies. Those policies insure against mistakes or omissions in performing legal services. To extend the attorney policy coverage for a wrongdoing to a former law firm would be ludicrous. The circuit court and the majority failed to give a reasonable interpretation to the terms of the insurance policy.