RUDER & FINN INCORPORATED, Appellant, v SEABOARD SURETY COMPANY, Respondent.

First Department, December 4, 1979

### APPEARANCES OF COUNSEL

*Stuart C. Sloame* of counsel *(Abraham J. Backenroth* with him on the briefs; *Hershcopf Graham & Sloame,* attorneys), for appellant.

*James F. Rittinger* of counsel *(Robert M. Callagy* and *George L. Mahoney* with him on the brief; *Satterlee & Stephens,* attorneys), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

On July 2, 1972, defendant Seaboard Surety Company (Seaboard) issued a policy of insurance to plaintiff Ruder & Finn (R. & F.). To the extent here relevant, Seaboard agreed:

"1. To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, as the result of any final judgment for money damages resulting from:

"(a) libel, slander, defamation or

"(b) any infringement of copyright or of title or of slogan or

"(c) piracy, plagiarism, or unfair competition or idea misappropriation under implied contract or

"(d) any invasion of rights of privacy committed or alleged to have been committed in any advertisement, publicity arti-

cle, broadcast or telecast and arising out of the Insured's business of Advertising Agents.

"2. To defend, in the name and on behalf of the Insured, any suit seeking damages for any of the above causes, even if such suit is groundless, false or fraudulent".

While this policy was in force, a firm called A.T.I., Inc. sued R. & F. in the Federal District Court, and later, in the State Supreme Court. The substance of A.T.I.'s charges against R. & F. in both complaints has been summarized in a prior decision of the Court of Appeals and need not be repeated herein. (*ATI, Inc. v Ruder & Finn,* 42 NY2d 454, 455-457.) Seaboard refused to defend those actions since it maintained that those actions were outside the stated coverage in the policy. R. & F. retained private counsel and successfully defended the underlying actions. The complaint in the District Court action was dismissed because it did not allege a Sherman Act violation *ATI, Inc. v Ruder & Finn,* SDNY, March 4, 1976, OWEN, J.). The complaint in the State Supreme Court action was subsequently dismissed for failure to state a cause of action (*ATI, Inc. v Ruder & Finn,* NYLJ, July 23, 1976, p 5, col 1, ASCH, J., affd 55 AD2d 540, affd 42 NY2d 454). R. & F. now seeks summary judgment awarding it damages of $74,966.18 for the legal expenses and disbursements incurred in the defense of the two actions. Seaboard cross-moves for summary judgment dismissing this complaint. It is not clear from the instant complaint whether R. & F. is suing for breach of contract or declaratory judgment. To be consistent with the court at Special Term, the complaint will be considered one seeking declaratory judgment.

It has frequently been remarked that the duty to defend is broader than the duty to pay. A policy of insurance protects the insured not only against suits for which there is unquestioned liability, but also against suits on their face within the compass of the risk against which insurance was taken, no matter how groundless, false or baseless those suits may be. (*Goldberg v Lumber Mut. Cas. Ins. Co.,* 297 NY 148, 154.) It is also well settled that if a policy is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the insured against the insurer (*Hartol Prods. Corp. v Prudential Ins. Co.,* 290 NY 44, 49).

In this regard, a leading treatise has made the following observations (14 Couch, Insurance 2d, § 51:45, p 538): "The insurer's duty to defend against a claim coming within the

policy coverage is not discharged by the fact that the plaintiff's pleading is not perfect: that is, the insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where by any reasonable intendment of the pleadings liability of the insured can be inferred, and neither ambiguity, inconsistency, nor duplicity in the plaintiff's complaint or declaration can justify escape of the insurer from its obligation to defend."

Finally, it should be emphasized that an insured's right to be accorded legal representation is a contractual right and consideration upon which his premium is in part predicated. This right exists even if debatable theories are alleged in the pleading against the insured (*International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 325). Thus, the duty to defend includes the defense of those actions in which alternative grounds are asserted, some within and others without the protection purchased (*Lionel Freedman, Inc. v Glens Falls Ins. Co.*, 27 NY2d 364, 368).

With the foregoing principles in view, the complaints in the underlying actions must be examined to determine whether they set forth any theory of recovery that should have prompted Seaboard to defend under the subject policy. While both underlying complaints were dismissed on motions addressed to their legal sufficiency, that fact is not determinative of the issue now presented. Even though the complaints were found to be legally insufficient under the "acid test" provided by a motion to dismiss, it is quite possible that they still stated a viable basis for relief that would activate the "defense" provision of the subject policy. As has been mentioned above, Seaboard was obligated not merely to defend in cases of perfect declaration, but also in cases where by any reasonable intendment of the pleadings liability of R. & F. could be inferred. (14 Couch, Insurance 2d, § 51:45, p 538).

The "three count" complaint in the Federal District Court proceeding is rambling, overlapping, repetitive, vague and otherwise inartfully drafted. Upon its face, that complaint seems to touch upon requests for relief grounded in (i) antitrust violations under the Sherman Act, (ii) conspiracy, (iii) commercial extortion, (iv) tortious interference with contractual relations and (v) false disparagement of products.

To recover against Seaboard on any of the first four grounds, R. & F. would have to show that one of them is a form of "unfair competition", an area protected by the policy.

The term "unfair competition" is not defined in the policy. Hence, it is necessary to search for the generally accepted meaning of that term. One such definition is found in American Jurisprudence 2d, Trademarks and Tradenames (§ 87, pp 755-756):

"Unfair competition, as a justiciable wrong under the common law, is a limited concept, although the scope of the doctrine, which has in recent years been expanded in some jurisdictions in varying degrees, cannot be precisely defined. It is a species of fraud or deceit. A universally recognized, and common, form or mode of unfair competition, is the simulation by one person of the name, symbols, or devices employed by a business rival, so as to induce the purchase of his goods under a false impression as to their origin or ownership and thus secure for himself benefits properly belonging to his competitor. The question as to what is unfair competition must be determined with particular reference to the character and circumstances of the business.

"As stated by some authorities, the essence of the wrong is the sale of one's own goods for those of another person. Also, the doctrine has been extended in many cases, especially the more recent, so as to afford protection and relief against the unjust appropriation of, or injury to, the good will or business reputation of another, even though he is not a competitor."

From this definition, it is evident that none of the first four grounds asserted (the nondefamation theories) constitute a form of "unfair competition". Moreover, R. & F., a public relations firm, is not even a competitor of ATI, a manufacturer of aerosol products. Therefore R. & F. could not compete with ATI, either fairly or unfairly. It should be further stressed that the purported violation of the Sherman Act falls in the antitrust area, a category not covered by the policy (see, generally, 54 Am Jur 2d, Monopolies, § 1, p 668).

█ The fifth ground for relief is embodied in paragraph 19 of the complaint. That paragraph reads as follows: "19.) As a result thereof, plaintiff did terminate further discussions with the defendants with regard to their representation of it. Thereafter, and as a result thereof, the defendants did continue said combination and conspiracy to restrain the plaintiff's trade and in so doing, have unfavorably represented and falsely desparaged [sic] plaintiff's aerosol products and their effects upon the environment." The instant policy does protect

R. & F. from suits seeking damages for libel, slander and defamation. Words spoken or written in disparagement of goods or of their quality are actionable per se where they amount to a libel or slander of the owner of the goods as an individual or in respect to his business (35 NY Jur, Libel and Slander, § 196, p 114). The conclusory allegation as to false disparagement, made by ATI in paragraph 19, evidences a clear intent on its part to hold R. & F. accountable for product defamation. It is true that the cause of action for product defamation may have been framed in terms legally insufficient to withstand a motion to dismiss. For example, ATI failed, *inter alia,* to allege (i) the words of disparagement, (ii) their publication or (iii) the special damages incurred thereby. Nonetheless, Seaboard was under a duty to defend the entire action for that cause, imperfectly pleaded as it was, fell within the policy coverage. R. & F. is entitled to recover legal expenses and disbursements expended in the Federal District Court proceeding. An assessment is directed to compute damages.

The complaint in the State action was similar in style and substance to the complaint in the Federal action. Two major differences are noteworthy. First of all, the State complaint did not aver any violation of the Sherman Act. Secondly, it did not allege that R. & F. had "falsely disparaged" ATI's product.

The grounds for relief in the State complaint, based upon nondefamation theories, do not fall within the purview of "unfair competition" for the same reasons previously enunciated with regard to those grounds in the Federal complaint. Furthermore, as has been mentioned, ATI never asserted that its products were "falsely disparaged" nor can such a conclusion be reached from the allegations in the State complaint. While not directly determinative of this appeal, Justice Asch's prior decision, granting the motion to dismiss the State complaint, is worthy of some comment *(ATI, Inc. v Ruder & Finn,* NYLJ, July 23, 1976, p 5, col 1, affd 55 AD2d 540, affd 42 NY2d 454, *supra).* In that decision, Justice Asch correctly observed that the State complaint did not assert the fundamental elements that comprise a cause for product defamation. When the State complaint is now read for purposes of determining Seaboard's duty to defend, it is again found to be deficient. ATI does not state any intent, either ambiguously, imperfectly or otherwise, to recover on the basis of product

defamation. Hence, R. & F. is not entitled to any recovery for the defense of the State action.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (HUGHES, J.), entered March 15, 1979, declaring that Seaboard had no duty to defend R. & F. in the underlying actions, should be modified, on the law, by declaring that (i) Seaboard was required to defend the Federal District Court action, (ii) R. & F. is entitled to recover damages for legal expenses and disbursements incurred in the Federal District Court action, and by (iii) directing an assessment of damages in that matter, and as modified, the order and judgment should otherwise be affirmed, with costs.

KUPFERMAN, BIRNS and FEIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on March 15, 1979, modified, on the law, by declaring that (i) Seaboard was required to defend the Federal District Court action, (ii) Ruder & Finn Incorporated is entitled to recover damages for legal expenses and disbursements incurred in the Federal District Court action, and by (iii) directing an assessment of damages in that matter, and as modified, the order and judgment is otherwise affirmed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.