SCHULMAN INVESTMENT COMPANY, Plaintiff,

v.

OLIN CORPORATION, Defendant and Third Party Plaintiff,

HABER & HENRY, INC., Tremco, Inc., Brisk Waterproofing Company, Inc., Thomas J. Mannino and Fraioli, Blum & Yesselman, Third Party Defendants.

HABER & HENRY, INC., Fourth Party Plaintiff,

v.

SUPERINTENDENT OF INSURANCE OF the STATE OF NEW YORK as Rehabilitator of Empire Mutual Insurance Company and United States Fire Insurance Company, Fourth Party Defendant.

No. 78 Civ. 176 (CHT).

United States District Court, S. D. New York.

May 21, 1981.

Jarblum & Solomon, P. C., New York City, for third party defendant-fourth party plaintiff Haber & Henry, Inc.; William Jarblum, Carol Safier, New York City, of counsel.

Morris, Graham, Stephens & McMorrow, for fourth party defendant United States Fire Ins. Co.; William H. Morris, Jericho, N. Y., of counsel.

## OPINION

TENNEY, District Judge.

This case arises from the construction of two office buildings in Harrison, New York. In 1978 the buildings' owner, Schulman Investment Company ("Schulman"), brought suit against Olin Corporation ("Olin"), which had constructed the exterior curtain wall. Olin impleaded, among others, Haber & Henry, Inc. ("Haber"), a glazing subcontractor. Under the able guidance of Magistrate Nina Gershon, most of the claims in this complicated litigation have been settled. Schulman received $175,000, of which Olin paid $125,000, while Haber shared the remaining $50,000 liability with its supplier Tremco, Inc., which granted Haber a $20,-000 merchandise credit.

When Haber was sued, it impleaded its two insurance companies, Empire Mutual Insurance Company ("Empire") and United States Fire Insurance Company ("USFIC"). With Empire, Haber had insurance for contractual liability and for comprehensive general liability, up to a limit of $25,000 per occurrence and $50,000 in the aggregate. With USFIC, Haber had comprehensive catastrophe liability insurance for claims above and beyond those covered by Empire's policy. Haber sought indemnification, legal fees, and punitive damages from its insurers because of their failure to defend Haber against Olin's third-party ac-

tion. At this time, Haber has settled with Empire for $5,000, but its dispute with USFIC has proved irreconcilable. Haber now moves for summary judgment, which USFIC opposes because of unresolved factual issues about the two insurance contracts involved.

The insurance contract between USFIC and Haber provides as follows:

I COVERAGE—

The Company agrees to indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract:

\* \* \* \* \* \*

(b) Property Damage Liability. For damages because of injury to or destruction of tangible property including consequential loss resulting therefrom, caused by an occurrence[.]

Affidavit of William Jarblum, sworn to February 17, 1981 ("Jarblum Aff."), Exh. 1–O. According to its terms, however, [t]his policy shall not apply:

\* \* \* \* \* \*

(b) under Coverage I (b), to injury to or destruction of (1) property owned by the insured or (2) any goods, products or containers thereof manufactured, sold, handled or distributed, or work completed by or for the insured, out of which the occurrence arises[.]

\* \* \* \* \* \*

(g) under Coverage I (b), to claims made against the insured

1. for repairing or replacing any defective product or products manufactured, sold or supplied by the insured or any defective part or parts thereof nor for the cost of such repair or replacement;

2. for the loss of use of any such defective product or products or part or parts thereof;

3. for improper or inadequate performance, design or specification; but nothing herein contained shall be construed to exclude claims made against the insured for personal injuries or property damage (other than damage to a product of the insured) resulting from improper or inadequate performance, design or specification[.]

In short, the USFIC policy covers damage to others and to others' property; but it does not cover repairs needed to bring Haber's products into conformity with the contracts under which they were sold. USFIC argues that it owed Haber no duty—neither to indemnify nor to defend—for a claim that Haber's curtain wall was defective. Answer of Fourth-Party Defendant USFIC ¶¶ 14–15. Haber claims, however, that the plaintiff Schulman "clearly alleges other damages than to reglaze the curtain wall," Jarblum Aff. ¶ 23, thus bringing the suit within the USFIC policy. But USFIC parries that, even if Schulman sought more than mere repairs of the defective work, Haber failed to exhaust its underlying insurance sources as required by the excess liability policy.

USFIC agreed to indemnify Haber for its "ultimate net loss" in excess of the "retained limit." The policy defines "ultimate net loss" as follows:

(b) "Ultimate net loss" means the total of the following sums with respect to each occurrence:

(1) All sums which the insured, or any company as his insurer, or both, become legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury, property damage or advertising liability to which this policy applies, and

(2) All expenses incurred by the insured in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages, excluding only the salaries of the insured's regular employees, provided "ultimate net loss" shall not include any damages or expense because of liability excluded by this policy.

This policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance.

Exh. 1–O, "Conditions—D. Other Definitions," attached to Jarblum Aff. The term "retained limit" is defined as the "greater of—(a) the total of the applicable limits of the underlying policies [including Empire's] . . . and the applicable limits of any other underlying insurance collectible by the insured; or (b) [$50,000]." *Id.* In other words, the retained limit would be $25,000 per occurrence,[1] and perhaps $50,000 if the Court found more than one occurrence, so that USFIC would not be obligated to indemnify Haber unless Haber or Empire incurred liabilities over the retained limit, *excluding* any defense costs covered by Empire.

USFIC argues that Haber never reached the retained limit and that, even if it had, USFIC owed no duty to defend because of other express limitations in its policies. Affidavit of William H. Morris, sworn to March 13, 1981 ("Morris Aff.") ¶ 7. Under the heading, "II. Defense Settlement," the parties agreed that the insurer would defend any suit which met the policy's coverage conditions (including retained limit), but only "[w]ith respect to any occurrence not covered by the underlying policies listed in Schedule A hereof [including Empire's policy]." Exh. 1–O, attached to Jarblum Aff. In short, the insurer argues that Haber's damages were too small to invoke excess coverage and that Haber's claims fall outside the USFIC policy because they fell within the Empire policy.

*DISCUSSION*

■■■ *The Duty to Defend.*—As so often stated in New York cases, "[a]n insurer's obligation to furnish its insured with a defense is heavy indeed, and, of course, broader than its duty to pay." *International Paper Co. v. Continental Cas. Co.,* 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 876, 320 N.E.2d 619 (1974); *Goldberg v. Lumber Mut. Cas. Ins. Co.,* 297 N.Y. 148, 154, 77 N.E.2d 131 (1948); *Green Bus Lines v. Consolidated*

*Mut. Ins. Co.,* 74 A.D.2d 136, 426 N.Y.S.2d 981, 985 (2d Dep't 1980). Under a duty-to-defend clause, the insurer's obligation to shoulder the burden of litigation is determined by whether "the allegations of the complaint . . . *arguably* refer to a case . . . within the broad coverage provision of the policy," not by the objective truth or likelihood of the facts alleged. *Green Bus Lines v. Consolidated Mut. Ins. Co., supra,* 74 A.D.2d at 141, 426 N.Y.S.2d at 985 (emphasis supplied); *Ruder & Finn Inc. v. Seaboard Sur. Co.,* 71 A.D.2d 216, 422 N.Y.S.2d 85, 87 (1st Dep't 1979); *American Home Assur. Co. v. Port Auth. of New York and New Jersey,* 66 A.D.2d 269, 278, 412 N.Y.S.2d 605, 610 (1st Dep't 1979). For example, in *Commercial Union Ins. Co. v. Albert Pipe & Supply Co.,* 484 F.Supp. 1153 (S.D.N.Y.1980), where it was unclear whether the third-party complaint sounded in negligence (which was covered by insurance) or in contract (which was not covered), the court ruled that the insurer had to defend the suit because the "[t]hird-party plaintiffs raise[d] a claim . . . potentially covered by the Policy." *Id.* at 1157. Similarly, in *Western World Ins. v. Jean & Benny's Restaurant,* 69 A.D.2d 260, 419 N.Y.S.2d 163 (2d Dep't 1979), *appeal dismissed,* 48 N.Y.2d 653, 421 N.Y.S.2d 202, 396 N.E.2d 485 (1979), the court ruled that an insurer is not absolved of its duty to defend simply because some claims which undisputably fall outside the policy's coverage are joined with claims falling within its scope. Moreover, the insurer must foot the bill for defense even if the complaint against the insured is ultimately unsuccessful, for liability insurance carries "an aspect of 'litigation insurance,' " *Spoor-Lasher Co. v. Aetna Cas. and Sur. Co.,* 39 N.Y.2d 875, 386 N.Y.S.2d 221, 352 N.E.2d 139 (1976).

■■■ The only way for an insurer to avoid defending the insured's case is by proving that "the allegations of the com-

---

1. An "occurrence" is defined as "either an accidental happening during the policy period or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the policy period. All damages arising out of such exposure to substantially the same conditions shall be considered as arising out of one occurrence." Exh. 1–O attached to Jarblum Aff. Surely, any damages flowing from the defective wall could come under the second half of this definition.

plaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *International Paper Co. v. Continental Cas. Co.*, *supra*, 35 N.Y.2d at 325, 361 N.Y.S.2d at 875, 320 N.E.2d 619. It is unusual, however, for an insurer to meet this burden. In one case where this heavy burden was met, *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364, 318 N.Y.S.2d 303, 267 N.E.2d 93 (1971), the Court of Appeals held that an insurer had properly refused to defend an insured against a charge of negligent operation of an elevator and negligent maintenance of a first floor hallway. The insured, a commercial tenant, did not maintain coverage for liability arising from the "ownership, maintenance or use of any elevator," and the insured's lease clearly showed that it "did not rent the first floor hallway and was not responsible for its maintenance." *Id.*, 27 N.Y.2d at 366–69, 318 N.Y.S.2d at 304–06, 267 N.E.2d 93. *See also Hartford Ins. Co. v. Maryland Cas. Co.*, 70 A.D.2d 929, 417 N.Y.S.2d 751 (2d Dep't 1979) (complaint clearly established that insured was not engaged in any activities covered by policy); *Contracting Plumbers' Cooperative Restoration Corp. v. Hartford Accident and Indem. Co.*, 59 A.D.2d 921, 399 N.Y.S.2d 255 (2d Dep't 1977) (insured subcontractor, a third-party defendant in a suit against the contractor, had not even done work at the site of the injury; "shotgun allegations of negligence cannot create a duty to defend beyond that for which the parties contracted"). But where the ultimate liability and the theory of liability might fall within the terms of the insurance policy, the insurer must defend. *Spoor-Lasher Co. v. Aetna Cas. and Sur. Co.*, *supra*. At a minimum, "the insurer must defend the suit until it can 'confine the claim' to a recovery that the policy does not cover." *Stichman v. Michigan Mut. Liability Co.*, 220 F.Supp. 848, 852 (S.D.N.Y.1963).

■ In this case, the excess insurer USFIC surely bears some duty of defense, but the extent of that duty must be interpreted in light of its position in this commercial setting and in light of the express contrac-tual provisions in the insurance policy. USFIC is the secondary insurer on the scene, and is entitled to draft its contract in reliance on the existence of the underlying insurer's primary duties to indemnify and to defend. Of course, "exclusionary clauses, when doubtful of meaning, are construed in favor of the insured," *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 37 N.Y.2d 69, 72, 371 N.Y.S.2d 444, 449, 332 N.E.2d 319 (1975). But that rule does not apply to clear phrases. In *Sturges*, the Court of Appeals ruled that an insurer could not decline to defend its insured on the basis of a clause whose "language is self-contradictory"; all "[e]ffort to make sense of [it] seems doomed to failure." 37 N.Y.2d at 74, 371 N.Y.S.2d 448, 332 N.E.2d 319. If contractual language is clear, however, there is no need to read the policy strictly in favor of the insured.

■ According to a provision titled "H. Loss Payable," "[l]iability . . . shall not attach unless and until the insured, the company on behalf of the insured, or the insured's underlying insurer has paid the amount of the retained limit." Exh. 1–O attached to Jarblum Aff. More specifically, the policy provides:

II DEFENSE SETTLEMENT—

With respect to any occurrence not covered by the underlying policies listed in Schedule A [including Empire's] . . . but covered by the terms and conditions of the policy except for the amount of the retained limit specified in Item 4(C) of the declarations, the company shall [bear the expense of defense, investigation, settlement, arbitration, and liability].

Exh. 1–O attached to Jarblum Aff. In addition, the policy did "not apply to defense, investigation, settlement or expenses covered by underlying insurance." *Id.* Viewed together, these provisions reflect the limited role and shielded position of the excess insurance carrier.

In the affidavit supporting its motion for summary judgment, Haber represents that USFIC refused to defend because the case involved only repairs which are excludable

from the policy and because Haber's liability never reached the retained limit. Jarblum Aff. ¶ 21. But Haber discussed only the first reason. Haber refers to an October 25, 1978 deposition in which one of plaintiff Schulman's executives estimated that there had been twenty thousand dollars of consequential damages in addition to the necessary repairs. *Id.* ¶ 25–26. Coincidentally, USFIC's letter declining to defend Haber was also dated October 25, 1978, thereby presumably precluding the possibility that USFIC was aware of the executive's deposition. Nonetheless, a fair reading of Schulman's complaint should have suggested that it sought more than just repairs. Paragraph 36 of the complaint states:

> As a result of [the contractor's] negligence, Schulman has sustained damage in at least the sum of $400,000 which damage continues to date, and cannot be fully ascertained at this time. Schulman reserves the right to apply to this Court to amend this complaint to set forth the actual amount of damages sustained by Schulman when ascertained at the time of trial.

Second Amended Complaint ¶ 36, attached as Exh. 1–A to Jarblum Aff. While the complaint is not specific about the kind of damage suffered, it implies that consequential damages are involved when it states that the "damage continues to date, and cannot be fully ascertained at this time." Even though many paragraphs in the plaintiff Schulman's complaint spoke mainly of repairs, *e. g.*, Second Amended Complaint ¶¶ 9–12, 23–25, it must be said that the plaintiff's negligence claims "arguably refer to a case . . . within the broad coverage provision of the policy," *Green Bus Lines v. Consolidated Mut. Ins. Co., supra,* 74 A.D.2d at 141, 426 N.Y.S.2d at 985.[2]

Despite the fact that USFIC might have had to indemnify Haber against Schulman, however, we cannot infer that USFIC necessarily owed Haber a duty to defend. If USFIC were a primary liability insurer, it clearly would have borne a duty to defend, but that primary duty (which would fall upon Empire) would have freed USFIC from the burden of defense. There may come a point at which the potential liability of the insured is so great that the excess carrier is required to participate in the defense despite any contractual provision disclaiming coverage of expenses covered by other policies. In this case, however, there has been no showing whatsoever that Schulman's claims fell outside Empire's duty to defend.[3] The only reference in Haber's papers to the relation between the underlying and excess insurers was one sentence in its memorandum in support of summary judgment: "Therefore it is conceivable that Empire was correct in stating that there was not liability under its policy yet as has been heretofore established there was liability under the U.S. Fire policy." Haber's Memorandum of Law at 15. This statement confuses the distinction between Empire's duties to indemnify and to defend—both of which must be exhausted be-

---

**2.** Haber apparently (and correctly) does not challenge USFIC's refusal to defend against Schulman's claims of breach of contract and breach of warranty. See Exh. 3 to Jarblum Aff.

**3.** Empire's settlement with Haber, of course, carries no weight whatsoever in determining the issues remaining between Haber and USFIC.

Regarding the amount of potential liability, the Court rejects Haber's use of *Sturges Mfg. Co. v. Utica Mut. Ins. Co., supra.* Haber quotes *Sturges* for the proposition that "[w]hen one product is integrated into a larger entity and the component product proves defective, the harm is considered harm to the entity." Haber's Memorandum of Law at 9. But the Court of Appeals substantially qualified this statement by adding: "to the extent that the market value of the entity is reduced in excess of the value of the defective component." 37 N.Y.2d at 73, 371 N.Y.S.2d at 447, 332 N.E.2d 319. In other words, insurers *may* generally exclude coverage for defective products and limit coverage to consequential damage to other property, but if the defective product (as an integrated component) makes a larger product valueless, even without injuring the larger product, the loss of value will be considered a covered liability. As applied to this case, *Sturges* only means that consequential damages to the building around the curtain wall should be covered—it does not mean that repairs to the wall should be covered.

fore USFIC's duty begins. In addition, it is surprising that Haber could argue for summary judgment on the basis of a "conceivable" state of affairs.

 *The Duty to Indemnify.*—The duty to indemnify should turn on a simple mathematical calculation of the policy limits and the insured's liability. In this case, however, the moving party fails to show clearly what liability Haber incurred. Haber and its supplier, Tremco, Inc., paid $50,000 to Schulman, and Tremco granted Haber a $20,000 merchandise credit. Jarblum Aff. ¶ 18. But these figures are nowhere adjusted to show what portion of the $50,000 Haber paid, to show how much the merchandise credit reduced Haber's actual loss, or to show how much of Haber's liability represented repairs (which are not covered by the Empire and USFIC policies) and how much represented consequential damages (which are covered). Until these figures are provided, neither the parties nor the Court can begin to judge whether USFIC owed Haber any duty of indemnification.

## CONCLUSION

The motion for summary judgment is denied. Haber has not shown that USFIC should have indemnified its losses. Nor has Haber shown that Schulman's claims arguably fell within USFIC's duty to defend; in other words, Haber has not shown that Schulman's claims arguably fell outside Empire's duty to defend.

With these factual issues outstanding, summary judgment is inappropriate at this time. The Court strongly recommends that the parties continue their negotiations, on their own or under the good offices of Magistrate Gershon.

So ordered.