**John F. SOKOLOWSKI, as Administrator and on Behalf of the M.M. & P. PENSION PLAN, Plaintiff,**

v.

**AETNA LIFE & CASUALTY COMPANY, Defendant.**

**No. 84 Civ. 4801 (RWS).**

United States District Court, S.D. New York.

Oct. 9, 1987.

Proskauer Rose Goetz & Mendelsohn, New York City, for plaintiff; Bettina B. Plevan, Katherine Raymond, of counsel.

Hendler, Murray & Mait, P.C., New York City, for defendant; William R. Mait, of counsel.

SWEET, District Judge.

## OPINION

Plaintiff John Sokolowski, as administrator and on behalf of the MM & P Pension Plan (the "Plan"), brought this action to enforce and recover damages for breach of its Fiduciary Responsibility Insurance Policy (the "Policy") issued by defendant Aetna Life & Casualty Company ("Aetna"). In 1979 and 1980, Aetna denied coverage and refused to defend two suits (*Deak* and *Chambless*) against the Plan and its trustees. Based upon the following facts and conclusions, judgment will be entered (1) granting the Plan the attorneys fees and litigation expenses it has incurred or will incur in defending the *Deak* and *Chambless* actions and (2) declaring that Aetna is obligated to indemnify the Plan for any attorneys fees ultimately awarded in those actions.

The resolution of the difficult and significant procedural and substantive issues presented has been greatly facilitated by the skill of counsel for both the Plan and Aetna. At issue is the interpretation to be given to a standard fiduciary responsibility policy issued by Aetna.

*Prior Proceedings*

This action was filed July 6, 1984 and proceeded through discovery until the summer of 1986 when Aetna by motion for summary judgment sought dismissal of the complaint. By the opinion of August 8, 1986, that motion was denied, and certain of the issues there presented were resolved. Familiarity with that opinion is assumed. After the completion of discovery with respect to Aetna's files dealing with the acceptance or declination of coverage on other similar policies, a one-day bench trial was held on July 1, 1987 in the course of which exhibits and depositions were entered into evidence, and argument

was held. There is little factual dispute between the parties though the conclusions to be drawn from those facts are sharply at issue.

*The Facts*

The Policy is a standard form Fiduciary Responsibility Insurance Policy, sometimes referred to as a "FRIP," drafted and marketed by Aetna to provide fiduciary liability insurance coverage to the trustees of employee benefit plans. Section I of the Policy provides:

I. INSURING AGREEMENT

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as *damages* on account of any claim made against the Insured for any Wrongful Act and the Company shall have the right and duty to defend such claim against the Insured seeking such damages, even if any of the allegations of the claim are groundless, false or fraudulent, and may make such investigation and settlement of any claim as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements. (emphasis added)

The word "damages" is defined in Section IV.(3) as follows:

"Damages" shall mean sums of money payable as compensation for loss or in discharge of an obligation of an Insured to make good a shortage in the Insured Trust or Employee Benefit Plan. The word "damages" shall not include:

(a) Fines, penalties, taxes or punitive or exemplary damage.

(b) Benefits due or to become due under the terms of the Trust or Plan, unless and to the extent that recovery for such benefits is based upon a Wrongful Act and is payable as a personal obligation of an Insured.

The Policy defines "Wrongful Act" as "any breach of fiduciary duty by the Insureds." The parties have stipulated, and the court has already held, that the *Deak*

and *Chambless* complaints alleged "Wrongful Acts" under the Policy.

The claim for coverage by the Plan arose out of two actions filed in 1979 and 1980. The *Deak* case is a class action filed in 1979 by a class of Plan participants who contended that adoption of Amendment 46 of the Plan Regulations by the trustees was a breach of fiduciary duty and a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. The basis for the contention was that the Amendment caused a suspension and forfeiture of their pension benefits until age 65 because of work in certain prohibited employment. They also unsuccessfully challenged Amendment 42, which defined Normal Retirement Age under the Plan as age 65.

The *Deak* plaintiffs sued the Plan, its trustees and its then administrator in their individual as well as representative capacities. Counts I, III and V of the *Deak* complaint ask that the challenged amendments be declared null and void, and seek a reinstatement of plaintiffs' pensions. Thereafter, in Counts II, IV and VI, the plaintiffs specifically allege that they are suing the trustees "both in their individual and representative capacities for the relief sought in Count[s] I [III, V] and additionally for punitive or exemplary damages." The *Deak* plaintiffs sought, *inter alia*, "to obtain relief for and to redress violations of the provisions of ERISA and the terms of the plan and to obtain such further relief as is appropriate." They also sought an award of attorneys' fees.

Following a bench trial, the District Court for the Middle District of Florida, Tampa Division, in a decision dated June 4, 1984, found that the trustees had breached their fiduciary duty under ERISA in adopting the disputed Plan Amendment. *Deak v. Masters, Mates and Pilots Pension Plan*, No. 79 Civ. 190, slip op. (M.D.Fla. June 4, 1984). The Court enjoined the trustees from enforcing the challenged Amendment and held that plaintiffs and some class members were entitled to monies denied them as a result of the application of that Amendment. The Court, how-

ever, declined to hold the individual trustees personally liable for the economic consequences flowing from their breach of fiduciary duty. That decision was appealed by both parties and the appeal, as well as plaintiffs' application for an award of attorneys' fees, remain pending.

The *Chambless* case was filed on July 24, 1980 by plaintiffs Arthur Chambless and his wife Mildred, attacking a similar Plan Amendment (No. 47) providing for suspension of benefits and also attacking Amendment 42. Chambless challenged the suspension of benefits until he reached age 65 and the effect of the suspension whereby the monthly payment that he could receive if he retired at age 65 was reduced from $920 to $470. He also contended that (i) the Plan and its trustees, along with the union and shipping companies that had employed him, violated the antitrust laws; (ii) defendants failed to supply information requested by plaintiff; (iii) defendants failed to give him due notice of the new rules; (iv) defendants failed to provide a full and fair review procedure; and (v) defendants were estopped from denying Chambless "full benefits." In their prayer for relief, the *Chambless* plaintiffs demanded judgment against the defendants, including the trustees, "jointly and severally" and requested the following five elements of relief:

(1) a declaration that the amendments be declared null and void, and that Chambless be paid "$920 per month beginning as of May 1, 1977, with interest thereon until the date of judgment, plus damages for and restoration of all other benefits plaintiffs have been deprived of by defendants' actions;"

(2) $100 per day for the failure to supply information under ERISA;

(3) treble damages for the alleged violation of the Sherman Antitrust Act by "defendants";

(4) punitive damages in the sum of $500,-000; and

(5) "attorneys' fees together with interest and costs, and ... such other and

further relief as [the] Court may deem just and proper."

In the *Chambless* case, the Honorable Robert L. Carter granted summary judgment dismissing the antitrust, estoppel and certain ERISA claims. *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430 (S.D.N.Y.1983). Following a trial on the remaining claims, Judge Carter ruled that Amendment 47 was arbitrary as applied to Chambless, but rejected Chambless' request for damages in the nature of retroactive benefits. The Court then ordered the trustees to approve Chambless' new application for a pension (which was to be made under specified circumstances) and to treat that application as if it had been made in 1977, when he originally applied for a pension, which would have the effect of granting him a larger pension than he would receive under the Plan Amendments. The Court declined to assess punitive damages or award emotional distress damages. *Chambless v. Masters, Mates & Pilots Pension Plan*, 602 F.Supp. 904 (S.D.N.Y.1984). Both decisions were affirmed by the Second Circuit, 772 F.2d 1032 (1985), and the Supreme Court denied Chambless' petition for a writ of certiorari. 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 804. Chambless' application for an award of attorneys' fees of $1.5 million was denied by the District Court but was reversed in part by the Second Circuit, which held that Chambless could recover the attorneys' fees expended solely in litigating the claim on which he had prevailed. 815 F.2d 869 (2d Cir.1987).

On March 7, 1979, shortly after the *Deak* action was filed, the Plan's insurance broker forwarded the complaint in that lawsuit to Aetna and requested that it assume defense of the action under the Policy. The claim was assigned to Alfred T. Dana ("Dana") (now deceased), an attorney and Superintendent of Aetna's Bond Claim Division in New York, and in accordance with Aetna's practice with respect to FRIP coverage, the *Deak* complaint was forwarded to Aetna's home office. Coverage was denied by letter of March 14, 1979. When the denial was questioned by the Plan's attorneys, Dana informed them that Aetna's

decision was based on the fact that the complaint sought declaratory relief and benefits due, that there was no claim against individual defendants for damages as defined in the Policy, and that the claim for punitive damages was excluded under the Policy.

▮ Similarly, following service of the summons and complaint in the *Chambless* action, the Plan's broker forwarded copies of those papers to Aetna on August 27, 1980.[1] The case was in turn referred to Dana. Dana advised the home office that he wanted to "get involved in [the] case." However, Rodney Hurtuk ("Hurtuk") to whom the matter was referred in Hartford, a non-lawyer, concluded that the claims raised in the *Chambless* complaint were not covered by the Policy and decided, as he had in the *Deak* case, to deny coverage. The basis for Hurtuk's conclusion was that the first, second and fourth prayers for relief for benefits that had been forfeited, $100 per day for failure to provide information, and punitive damages, respectively, were excluded from the definition of damages; that the third prayer (the antitrust claim) "would apply to the union itself" rather than the trustees; and that the fifth prayer (for attorneys' fees) was "punitive in nature" and thus excluded by the definition of "damages."

No additional documentation concerning its decision not to defend the *Deak* and *Chambless* cases is available as a result of Aetna's policy requiring destruction of the files two years after the claims were made, although the Plan had advised Aetna that it disagreed with the decision to deny coverage within two years of making its claims.

The Plan adduced additional evidence relevant to Aetna's assessment of and practices regarding FRIPs. A 1975 memorandum written by an Aetna attorney who partici-

pated in the development of the FRIP to three Aetna managers described the Policy's definition of damages, as follows:

> Under this definition [the definition of damages] we clearly will have no duty to defend any suit for benefits to be paid by the plan. *However, a suit against a trustee alleging that the claimant failed to receive benefits because of a breach of trust and that the trustee has a personal liability is covered.* (emphasis added)

In reviewing that document, Philip Shafer, Manager of Aetna's Fidelity Bond Unit, agreed that there would be coverage under Aetna's FRIP "[i]f the benefit is being sought from the trustee individually ...."

An "Aetna Bulletin" giving "15 Claim Examples That Show Why Fiduciaries Need Coverage" lists as examples of covered damages instances where:

> (7) A class of beneficiaries brought suit against the plan Fiduciaries claiming personal liability as a result of a negligent amendment of the plan.
>
> \*   \*   \*   \*   \*   \*
>
> (12) A beneficiary sued the plan trustees individually in an attempt to recover a benefit lost because of inadequate instruction.

This bulletin was issued in connection with a 1980 policy revision, not the 1975 policy at issue. Although no evidence was presented that the trustees of the Plan were aware of either the internal memoranda or the bulletin, these materials are relevant since prior to its decision to deny coverage on the Policy at issue here, Aetna itself had interpreted the FRIP as including claims for benefits against trustees individually.

The Plan also adduced evidence as to Aetna's acceptance of a duty to defend in several cases in which trustees were sued

---

**1.** Aetna has asserted a defense based upon untimely notice of the *Chambless* action, which it received one month after the suit had been filed. It is well-settled that an insurance company waives the notice requirements in its policy when it disclaims coverage on some ground other than the insured's noncompliance with that notice provision. *H.S. Equities, Inc. v. Hartford Accident and Indem. Co.,* 661 F.2d 264,

270 (2d Cir.1981); *Rock Trans. Properties Corp. v. Hartford Fire Ins. Co.,* 433 F.2d 152, 154 (2d Cir.1970). Here, Aetna did not raise the timeliness issue until it filed its Answer in this lawsuit in August 1984, almost four years after it declined coverage on other grounds. Therefore, Aetna has waived any defense based upon untimely notice of the *Chambless* action.

for benefits in their individual capacities. When asked to explain why Aetna had agreed to defend in *Elzer v. New York Marine Towing & Transp. Indus. Pension Fund,* a 1977 action brought in the Southern District of New York, Hurtuk, a senior analyst in Aetna's home office who is responsible for reviewing requests from insureds, stated that the plaintiff had sought the equivalent of benefits due from the trustees personally, whether or not benefits were due from the fund. As to *Braddock v. Montgomery,* filed in the Federal District Court for the Middle District of Florida in 1978, Hurtuk explained that because it appeared that unauthorized acts by the trustees had diminished the fund and that liability for the loss was alleged against the individual trustees, Aetna defended. In *Kalish v. Illinois Education Association,* filed in the Northern District of Illinois in 1984, the complaint alleged, *inter alia,* that the trustees violated their fiduciary duties under ERISA by discontinuing disability benefits previously provided. Hurtuk stated that Aetna agreed to defend this suit because of the request for "$50,000 in compensatory damages from the trustees individually" even though the complaint alleged no damages other than a loss of benefits.

Facts relating to two additional cases were presented. In *Stewart v. Kreul,* a class action brought in the District Court for the District of Maryland in 1983 against a guaranteed annual income trust fund and its trustees, plaintiffs alleged that defendants had denied "plaintiffs and their class benefits with an estimated value of $5,000,000" and thus sought $5 million in "compensatory damages." In a letter responding to the trustees' request for representation, Aetna stated:

> While "damages" do not include "benefits due or to become due under the terms of the Trust or Plan ..." the $5 million in damages are sought against individual trustees and accordingly, any judgment rendered would become "payable as a personal obligation of an Insured" under Section IV(3)(b) of the policy.

In response to a similar request in *Conca v. Colorado Tile, Marble and Terrazzo Workers Pension Fund,* a 1984 action alleging unlawful denial of benefits filed in the City and County of Denver, Aetna stated:

> [W]hile under [policy section] IV(3)(b) there is no coverage for benefits to [sic] or to become due under the terms of the trust plan, your FRIP Policy would respond to a benefit aware [sic] rendered against an individual trustees [sic] as such award would be payable as a *personal* obligation of an insured.

*The Issues*

These facts and the prior opinion of the court leave the following issues for resolution:

1. What are the appropriate rules for interpretation of the Policy?

2. Do the complaints allege individual liability of the defendants for damages as defined in the Policy so as to require Aetna to defend the actions?

3. Do the plaintiffs' claims for attorneys' fees in both *Deak* and *Chambless* require Aetna to (a) defend the actions and (b) indemnify the Plan for any attorneys fees, if any, awarded to the *Deak* and *Chambless* plaintiffs?

A. *Rules for the Interpretation of the Policy*

■ Section I of the Policy provides that Aetna "shall have the right and duty to defend ['any claim made against the Insured for any Wrongful Act'] ... even if any of the allegations of the claim are groundless, false or fraudulent....." This follows New York law that an insurer's duty to defend is both distinct from and greater than its duty to pay. *Ruder & Finn, Inc. v. Seaboard Surety Co.,* 71 A.D.2d 216, 422 N.Y.S.2d 85 (1st Dep't 1979), *aff'd,* 52 N.Y.2d 663, 422 N.E.2d 518, 439 N.Y.S.2d 858 (1981); *Spoor–Lasher Co. v. Aetna Casualty & Surety Co.,* 39 N.Y.2d 875, 352 N.E.2d 139, 386 N.Y.S.2d 221 (1976). The general rule is that an insurer has a duty to defend if there is *potentially* a claim within the coverage of

the policy. *Ruder & Finn, Inc.*, 52 N.Y.2d at 670, 422 N.E.2d at 521, 439 N.Y.S.2d at 861. As the Court held in *Schulman Invest. Co. v. Olin Corp.*, 514 F.Supp. 572, 575 (S.D.N.Y.1981):

> the insurer's obligation to shoulder the burden of litigation is determined by whether "the allegations of the complaint ... *arguably* refer to a case ... within the broad coverage provision of the policy," not by the objective truth or likelihood of the facts alleged.

quoting *Green Bus Lines, Inc. v. Consolidated Mutl. Ins. Co.*, 74 A.D.2d 136, 141, 426 N.Y.S.2d 981, 985 (2d Dep't 1980).

■ Of course, where there is no legal or factual basis upon which the insurer could be obligated to indemnify the plaintiff under any circumstances within the provisions of the policy, the insurer has no duty to defend, or to pay damages for its refusal to defend. *Mary & Alice Ford Nursing Home Co. v. Firemen's Ins. Co.*, 86 A.D.2d 736, 446 N.Y.S.2d 599 (3d Dep't), *aff'd*, 57 N.Y.2d 656, 439 N.E.2d 883, 454 N.Y.S.2d 74 (1982). Therefore, in order for Aetna to be relieved from its duty to defend, it must:

> demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.

*International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 325, 320 N.E.2d 619, 621, 361 N.Y.S.2d 873, 875 (1974).

These well-established principles of New York insurance law are uncontested. However, Aetna notes the distinction between special coverage insurance and broader coverage insurance and urges that this distinction diminishes their application in this case. Aetna relies on the New York Court of Appeals' decision in *Albert J. Schiff Associates, Inc. v. Flack*, 51 N.Y.2d 692, 417 N.E.2d 84, 435 N.Y.S.2d 972 (1980) where the Court, in *dicta*, contrasted the special coverage insurance at issue there with other types of coverage:

> After all, the plaintiff's policy here was neither a standard general liability policy nor a standard general liability policy with a contractual liability indorsement. Nor was it one comprehensive enough to protect against all business vicissitudes. To hold otherwise, on a fair reading of the policies, would be to create additional coverage beyond that which was brought and paid for.

*Schiff*, 417 N.E.2d at 88, 435 N.Y.S.2d at 976. In *Schiff*, however, the issue was whether by initially disclaiming coverage based upon certain exclusions in the policy, an insurer waived its right to argue that the allegations in a complaint did not come within the general insuring clause. The Court held that it did not. In holding that the doctrine of waiver is simply inapplicable where the issue is the existence or non-existence of coverage, the Court followed standard principles of insurance contract interpretation: "while a contract of insurance is to be construed liberally in favor of the insured, where its terms are clear and unambiguous, they must be so read." *Id.* 417 N.E.2d at 87, 435 N.Y.S.2d at 975. The Court then found that the allegations in the complaint did not fall within the unambiguous terms of coverage. Although an insurance contract may narrowly define the scope of coverage, neither narrowly defined terms nor the Court's decision in *Schiff* require a court to ignore the rule that the insurer's duty to defend is measured by whether the allegations of the complaint arguably refer to a claim within the coverage provision of the policy, whether broad or narrow.

■ It is also understood in New York, as elsewhere, that ambiguities in insurance contracts are to be construed strictly against the insurer, *Westchester Resco Co., L.P. v. New England Reinsurance Corp.*, 648 F.Supp. 842 (S.D.N.Y.1986), *aff'd*, 818 F.2d 2 (2d Cir.1987); *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 353, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 354 (1978), particularly where the ambiguity is found in an exclusionary provision, such as the "damages" exclusions Aetna relies on here. *Index Fund, Inc. v. Insurance Co. of North America*, 580 F.2d 1158 (2d Cir.1978), *cert. denied*, 440 U.S. 912, 99

S.Ct. 1226, 59 L.Ed.2d 461 (1979); *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 34 N.Y.2d 356, 314 N.E.2d 37, 357 N.Y.S.2d 705 (1974). In cases where the policy language is ambiguous, extrinsic evidence as to the policy's meaning may be introduced. *Barnhardt v. Hudson Valley Dist. Council,* 114 A.D.2d 701, 494 N.Y.S.2d 667 (3d Dep't 1985). One type of extrinsic evidence is evidence of how the insurance company has itself interpreted the disputed provision. As the Court held in *West v. Aetna Casualty & Surety Co.,* 49 Misc.2d 28, 29, 266 N.Y.S.2d 600, 603 (1965):

> A proper consideration to be weighed by the court in resorting to extrinsic evidence may be the intent of the parties and the interpretation that the defendant itself has placed on the language in the conduct of its business in processing like claims.

*See also Leumi Fin. Corp. v. Hartford Accident & Indem. Co.,* 295 F.Supp. 539, 545 (S.D.N.Y.1969) ("[t]he circumstances under which the defendant has paid other bondholders may be of some help to a court in construing the words 'dishonest' and 'fraudulent' " in an insurance policy).

From these authorities and the facts presented, it is concluded that ambiguities should be construed against the insurer, that the purpose and operation of the policy, whether general or specific, should be considered and that the insurer's practices relating to similar policies are relevant, though not necessarily conclusive, given the distinctions almost always present between the roles and alleged acts of those covered by the policies. Here it is evident that the primary purpose of the Policy was to insure the Administrator against shortages or losses in the Plan's funds as a result of a breach of fiduciary duty—theft by an improperly supervised employee, for example. The phrase defining "damages" as "compensation for loss" must be construed broadly to the extent it is ambiguous because it defines coverage and originated with the insurer. The exclusion for benefits "unless .. payable as a personal obligation of the insured" must be construed, as Aetna suggests, in light of the

purpose and intent of the FRIP, a specific rather than general policy.

### B. *Aetna's Duty to Defend*

■ There is no dispute that the *Deak* plaintiffs sought to impose liability upon the individual trustees for the relief sought—the restoration of benefits—based upon the harm alleged—breach of fiduciary duty under ERISA. ERISA imposes personal liability on trustees for breach of fiduciary duty. 29 U.S.C. §§ 1109, 1132(d)(2). Although the Florida district court ultimately found that the *Deak* plaintiffs had not proven the "type of breach for which Congress intended to impose personal liability," slip op. at 21, the trustees were not required to make a showing that the claim was well-founded at the time of their request for representation from Aetna. What is essential is the claim for personal liability of the trustees, not the probability of success of such a claim.

In correspondence with the Plan's attorneys following Aetna's declination of coverage in the *Deak* case, Dana stated:

> Claims for benefits is either an obligation of the Fund, if so held, or non-existent, if so held. A Fund cannot be *personally* obligated, only individuals. In our subject suit there is no claim against individual defendants for such relief. The suit alleged punitive or exemplary damages against the defendants and these are specifically excluded from our coverage.

Obviously, Aetna cannot avoid its duty to defend by asserting that the *Deak* complaint seeks only punitive damages against the individual trustees, when the complaint explicitly seeks compensatory relief as well. Moreover, to the extent Dana was claiming that Aetna had no duty to defend because the claim for benefits against the individual trustees was groundless, such a position is contrary to both the Policy and New York law, which requires an insurer to defend any action in which liability could conceivably result. As this Circuit reiterated recently in *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267 (2d Cir.1987), "the added breadth [of an insurer's duty to de-

fend] arises out of the duty to provide a defense against even wholly frivolous, and thus nonindemnifiable, claims so long as the allegations fall within the policy's coverage."

The *Chambless* complaint named the trustees "individually; [and] as trustees" of the Plan. The complaint alleged, *inter alia,* that the trustees' breach of their fiduciary duty in violation of ERISA caused injury to the plaintiffs. The prayer for relief was asserted against the trustees jointly and severally and requested, *inter alia,* "the payment of $920 per month beginning as of May 1, 1977, with interest thereon until the date of judgment." The Plan has characterized this request as one for retroactive benefits, while Aetna contends that it is nothing more than a "claim for the restoration of benefits." [2] Either reading leads to the conclusion that the *Chambless* complaint states a claim for benefits alleged due under the Plan against the trustees individually on the basis of an alleged breach of fiduciary duty.

The allegation of personal liability of the trustees in both the *Deak* and *Chambless* complaints nullifies the benefits exclusion from the damage definition. Indeed, that result is consistent with the basic purpose of the Policy—to protect the trustees from a breach of fiduciary duty other than those specifically excluded, which could be generally described as illegal, wilful, or grossly negligent acts. The Policy accomplishes its purpose by excluding benefits from damage coverage unless a personal obligation of the insured to restore the benefits is alleged.

[6] Aetna makes a second argument to disclaim its obligation to defend. Even assuming that the *Deak* and *Chambless* complaints assert claims against the trustees for restoration of benefits due under the Plan, Aetna contends that restoration of benefits does not meet the definition of damages in the Policy. Ambiguity concerning this issue was one of the grounds for the denial of summary judgment in the opinion of August 8, 1986. As discussed below, the ambiguity that remains as to this issue must be resolved in favor of the Plan.

The first sentence of Section IV.3 defines "damages" as "sums of money payable as compensation for loss or in discharge of an obligation of an Insured to make good a shortage in the Insured Trust or Employee Benefit Plan." In this respect, the Policy's definition of damages partially tracts the statutory language in ERISA that imposes liability on trustees for breach of fiduciary duty. 29 U.S.C. § 1109 (fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach"). Aetna contends, correctly, that the claims for restoration of benefits in the *Deak* and *Chambless* do not allege a deficiency or shortage in the Plan. Instead, the complaints allege the wrongful withholding or suspension of benefits due under the Plan. Although a suspension of benefits may be the equivalent of a "loss" in the eyes of a pension claimant, the first sentence of Section IV.3, when read in the light of the statutory liability the Policy was intended to insure against, plainly contemplates a loss or shortage that results in a deficiency in the Plan.

The second sentence of Section IV.3 provides, in part, that the word damages shall not include "benefits due or to become due under the terms of the Trust or Plan, *unless and to the extent that recovery for such benefits is based upon a Wrongful Act and is payable as a personal obligation of an Insured.*" (emphasis added). Relying on this language, the Plan contends that the word damages includes recovery for benefits due under the Plan based upon a Wrongful Act and payable as a personal obligation of a trustee. Aetna

---

**2.** The opinion of August 8, 1986 suggested that the request in the *Chambless* complaint for "damages for ... all other benefits plaintiffs have been deprived of" was in addition to any monies sought by the plaintiffs within the scope of benefits due. Upon closer examination, the court agrees with Aetna's position that this re-

quest is nothing more than a further claim for the benefits that the Plan had suspended. Accordingly, the Plan's supplementary argument based upon the assumption that this request was a separate and distinct claim for damages will not be considered.

responds by asserting that the two sentences must be read in conjunction, in which case the word damages covers only benefits due as a personal obligation of a trustee when the Wrongful Act of a trustee has caused a loss or shortage in the Plan. However plausible Aetna's reading of this clause may be, it is not so free from ambiguity as to outweigh the opposite reading urged by the Plan.

The absence of language explicitly narrowing the nonexclusion of benefits claimed against a trustee creates a reasonable inference that coverage extends to claims that on their face appear to exceed the bounds of liability imposed on fiduciaries by ERISA;[3] indeed, such an inference is supported by the extrinsic evidence discussed above concerning Aetna's own interpretations of its FRIP and Aetna's response to similar claims both before and after *Deak* and *Chambless*. Although the failure to include restrictive language in sub-section IV.3(b) could be construed as a conscious decision by Aetna to broaden the coverage afforded by its FRIP, such a conclusion is not necessary to a finding that ambiguity exists as to the meaning of the damage definition set forth in Section IV.3.

Following the established principles of insurance policy construction already discussed, the ambiguity as to the meaning of the word "damages" in the Policy must be construed against Aetna. Thus, the complaints in *Deak* and *Chambless* do assert a claim for damages against the trustees within the meaning of the Policy. The fact that the claim against the trustees as individuals, as a matter of law, appeared and was later held in *Deak* to exceed the scope of liability that Congress intended to impose on fiduciaries of employee benefit plans obviously could not serve as grounds for Aetna's refusal to defend the suits. Even as to its FRIP, Aetna's duty to defend is greater than its duty to pay. Accordingly, Aetna must bear the costs and attorneys fees incurred by the Plan in defending the *Deak* and *Chambless* actions.

## C. The Claims for Attorneys Fees

Plaintiffs in both *Deak* and *Chambless* asserted claims for attorneys fees. As alternate grounds for its request for representation from Aetna, the Plan contends that the claims for attorneys fees by themselves should be deemed claims for damages against the trustees. The Plan premises its claim on: (1) Aetna's failure to exclude attorneys fees from the definition of damages in Section IV.3; (2) Section 502(g)(1) of ERISA which permits the district court to award attorneys fees in ERISA claims; (3) case law holding attorneys fees under ERISA to be non-punitive; and (4) Aetna's practice since 1984 of treating attorneys fees as a form of damages covered by its FRIP. For its part, Aetna contends that attorneys fees fall under the Policy's exclusion for punitive damages, that this interpretation is consistent with judicial interpretations of attorneys fees under ERISA prior to 1984, and that any change in Aetna's practice since 1984 can be attributed to its obligation to apply current judicial decisions to evaluate claims.

The Plan's contention that attorneys fees are covered by the Policy raises an important issue: Whether a claim for attorneys fees under ERISA triggers Aetna's duty to defend and to indemnify the Plan for any attorneys fees that may ultimately be awarded to the *Deak* and *Chambless* plaintiffs.

Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g) provides:

> In an action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The statute thus includes attorneys fees as a separate and distinct item of relief which, the Plan argues, indicates an intent to treat attorneys fees as an element of damages under a FRIP.

The Plan has cited several authorities for its claim that attorneys fees under ERISA

---

**3.** For example, had Aetna inserted the clause "that caused a loss or shortage to the Insured Trust or Employee Benefit Plan" after the term "Wrongful Act" in Section IV.3(b), the absence of coverage for the claims asserted in *Deak* and *Chambless* would be less uncertain.

are compensatory, rather than punitive, damages. Courts of this and other circuits have followed a five-factor test to determine whether attorneys fees should be awarded under ERISA:

> (1) The degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980); *see Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980); *Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir.1978); *Janowski v. International Brotherhood of Teamsters Local No. 710 Pension Fund,* 673 F.2d 931, 940 (7th Cir.1982); *Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3d Cir.1983); *Ford v. New York Central Teamsters Pension Fund,* 506 F.Supp. 180, 183 (W.D.N.Y. 1980), *aff'd,* 642 F.2d 664 (2d Cir.1981); *Korn v. Levine Bros. Iron Works Corp.,* 574 F.Supp. 836 (S.D.N.Y.1983). Commenting on the inclusion of non-punitive elements in the above test, the Court of Appeals for the Seventh Circuit concluded in 1984 that claims for attorneys fees under ERISA should not be viewed as claims for punitive damages: "nothing in the language of [ERISA] section 1132(g)(1) suggests that an award of attorney's fees under that section serves the same purpose as awarding punitive damages (and there is no pertinent legislative history)." *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 828 (7th Cir.1984).

Aetna concedes that following the *Bittner* decision Aetna revised its position and began to admit coverage for attorneys fee claims that were found to be non-punitive. Aetna argues, however, that it modified its position on attorneys fees directly in response to the abrupt change in the law announced in *Bittner.* This argument ignores much of the case law that preceded and, indeed, laid the foundation for *Bittner.* As the Plan notes in its brief, as early as 1980 it was held that the common law standard, which was essentially a punitive measure, would not determine the availability of attorneys fees under ERISA. Thus, in *Ford v. New York Cent. Teamsters Pension Fund,* 506 F.Supp. 180, 182 n. 3 (W.D.N.Y.1980), *aff'd,* 642 F.2d 664 (2d Cir.1981), the court stated:

> Congress, in passing the ERISA provision for recovery of attorney's fees did not merely intend to codify existing common law rules and therefore it was not necessary for plaintiff to show bad faith on the part of the defendants in order to recover attorney's fees.

*See also Baeten v. Van Ess,* 474 F.Supp. 1324, 1332 (E.D.Wisc.1979) (showing of bad faith not required to recover attorneys fees under ERISA). Similarly, only one of the five factors followed by courts in the above cases focuses specifically on the losing party's "culpability or bad faith." Thus, it is simply not true that prior to the *Bittner* decision in 1984 attorneys fees under ERISA were considered to be punitive.[4]

Aetna's claim that attorneys fees are punitive is rooted in part in its contention that attorneys fees do not constitute "compensation for loss" or an obligation "to make good a shortage in the Insured Trust," as damages are defined in the Policy. As already discussed at length *supra,* the meaning of the word "damages" in Section IV.3 of the Policy is not free from ambiguity. Further, as Judge Cederbaum noted recently in an analogous case, whether a request for attorneys fees should be deemed a request for damages covered by an insurance policy is a "very close question." *Glusband v. Fittin Cunningham*

---

4. The Plan also notes that even though the definition for "damages" in Aetna's standard form FRIP has not changed, since 1984 Aetna has agreed that it would be responsible for attorneys fees awarded to a plaintiff in a suit against an insured. Thus, in agreeing to defend the *Conca v. Colorado Tile* case, discussed *supra,* Aetna advised its insured by letter dated January 24, 1985 that "[a]ny award for the 'reasonable attorney fees' sought would be covered if award has a compensatory/type (i.e. non-punitive) damage."

*Lauzon, Inc.*, No. 80 Civ. 7387, slip op. (S.D.N.Y. March 12, 1987) [Available on WESTLAW, DCT database]. Following the general rule of construing insurance policies most favorably to the insured and most strictly against the insurer, Judge Cederbaum concluded that a policy that indemnified the insured for "any loss of money or other property" was broad enough to cover attorneys fees. *See also City of Ypsilanti v. Appalachian Ins. Co.*, 547 F.Supp. 823, 828 (E.D.Mich.1982), *aff'd*, 725 F.2d 682 (6th Cir.1983) ("attorney fee award in a civil rights suit is a form of 'damage' which the defendant contracted to cover").

The Policy obligated Aetna to pay "all sums which the insured shall become legally obligated to pay as *damages*," which were defined, *inter alia*, as "sums of money payable as compensation for loss." Both the *Deak* and *Chambless* complaints asserted a claim for attorneys fees under ERISA against the trustees and thereby created a risk of "loss" to the Plan and to the trustees. Since Aetna's reasons for viewing attorneys fees strictly as punitive damages have been shown to lack foundation, it does not exceed a fair reading of the Policy to construe attorneys fees as a form of damages covered by the Policy. Accordingly, Aetna was obligated to defend the trustees against the claims for attorneys fees asserted under ERISA in the *Deak* and *Chambless* suits.

For the foregoing reasons, the Plan's request for indemnification for all litigation expenses and attorneys fees it has incurred or will incur in defending the *Deak* and *Chambless* actions is granted. The Plan's request for a declaratory judgment that Aetna is obligated to indemnify it for any and all attorneys fees ultimately awarded to either the *Deak* or *Chambless* plaintiffs is also granted.

The parties are directed to submit judgment on ten (10) days notice.

IT IS SO ORDERED.